# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT
# NO. 23-11286

_____

## KRISTIE WILLIAMS

**Plaintiff-Appellee,**

v.

## THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA

**Defendant-Appellant.**

_____

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

_____

## <u>BRIEF OF APPELLANT THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA</u>

B. Tyler White
**JACKSON LEWIS P.C.**
501 Riverside Avenue, Suite 902
Jacksonville, Florida  32202
Telephone:  904-638-2665
Tyler.White@jacksonlewis.com

Lynlee Wells Palmer
Daniel B. Harris
**JACKSON LEWIS P.C.**
Synovus Center
800 Shades Creek Parkway, Suite 870
Birmingham, Alabama  35209
Direct Dials:  205-332-3096/3097
Facsimile:  205-332-3131
Lynlee.Palmer@jacksonlewis.com
Daniel.Harris@jacksonlewis.com

David R. Mellon
Spencer A. Kinderman
Emily T. Vande Lune
**THE UNIVERSITY OF ALABAMA
SYSTEM UAB OFFICE OF COUNSEL**
1720 2nd Avenue South, Suite AB 820
Birmingham, Alabama  35294
Telephone:  205-934-3474
drmellon@uasystem.edu
skinderman@uasystem.edu
evandelune@uasystem.edu

**ATTORNEYS FOR APPELLANT THE
BOARD OF TRUSTEES OF THE
UNIVERSITY OF ALABAMA**

## APPELLANT'S CERTIFICATE OF INTERESTED PERSONS

Appellant The Board of Trustees of the University of Alabama ("the Board" or "Appellant"), pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, hereby submits its Certificate of Interested Persons and certifies that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1. Edwards, Blake C., Counsel for Appellee;

2. Edwards, Nicole D., Counsel for Appellee;

3. Edwards & Edwards Attorneys and Mediators, PLLC, Law Firm of Counsel for Appellee;

4. Haikala, Honorable Madeline H., United States District Judge for the Northern District of Alabama;

5. Harris, Daniel B., Counsel for Appellant;

6. Jackson Lewis, P.C., Law Firm of Counsel for Appellant;

7. Kinderman, Spencer A., Counsel for Appellant;

8. Mellon, David R., Counsel for Appellant;

9. Palmer, Lynlee Wells, Counsel for Appellant;

10. The Board of Trustees of The University of Alabama, Appellant;

11. Vande Lune, Emily T., Counsel for Appellant;

12. White, B. Tyler, Counsel for Appellant;

13. Williams, Kristie, Appellee.

Appellant The Board of Trustees of The University of Alabama is organized under the laws of the State of Alabama, and, as a governmental entity, is exempt from the requirements of Fed. R. App. P. 26.1. Notwithstanding this, the Board states as follows:

No parent, subsidiary, or affiliate of the Board has issued shares or debt securities to the public.

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary, as the relevant allegations and legal arguments are adequately presented in the briefs and the record. However, should this Court wish to conduct oral argument to aid its consideration of the novel legal issues presented by this appeal, the Board would welcome such argument.

# TABLE OF CONTENTS

APPELLANT'S CERTIFICATE OF INTERESTED PERSONS .......................... iii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iv

Table of Authorities ................................................................................. vii

STATEMENT OF JURISDICTION......................................................................x

STATEMENT OF THE ISSUES.........................................................................1

STATEMENT OF THE CASE.............................................................................2

    I.    STATEMENT OF THE FACTS .........................................................2

    II.   COURSE OF PROCEEDINGS AND DISPOSITION BELOW ................3

    III.  STANDARD OF REVIEW ...............................................................4

SUMMARY OF ARGUMENT ..........................................................................5

ARGUMENT ................................................................................................6

    I.    THE BOARD IS IMMUNE FROM WILLIAMS' MILITARY

    CAREGIVER LEAVE CLAIMS. ......................................................6

        A. The Board is a State Entity with Eleventh Amendment Immunity. ........7

        B. Standards for Eleventh Amendment Immunity. .....................................8

        C. Prior Application of Eleventh Amendment Immunity to the FMLA... 10

        D. The Eleventh Amendment Bars Claims Under the Military Caregiver

        Provisions of the FMLA. ...........................................................13

        E. The Board is Immune from Williams' Claims. .....................................19

II.   THE DISTRICT COURT ERRED BY FINDING THAT WILLIAMS TOOK FMLA FAMILY-CARE LEAVE, NOT MILITARY CAREGIVER LEAVE. ..................................................................................19

    A. Williams Requested and Took FMLA Military Caregiver Leave. .........20

    B. Williams did not Plead Necessary Facts to Establish that she Took FMLA Family-Care Leave. .......................................................................21

CONCLUSION .....................................................................................23

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS AND TYPE-STYLE REQUIREMENTS ...........25

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Alden v. Maine*,
    527 U.S. 706 (1999) ........................................... 8

*Atascadero State Hosp. v. Scanlon*,
    473 U.S. 234 (1985) ........................................... 8

*Bd. of Trs. of Univ. of Ala. v. Garrett*,
    531 U.S. 356 (2001) ...................................... 9, 10, 12, 17, 19

*City of Boerne v. Flores*,
    521 U.S. 507 (1997) ........................................... 10

*Coleman v. Ct. of Appeals*,
    566 U.S. 30 (2012) ...................................... 9, 10, 12, 13, 17, 18

*Fitzpatrick v. Bitzer*,
    427 U.S. 445 (1976) ........................................... 9

*Fla. Prepaid Postsecondary Ed. Expense Bd. v. College Savings Bank*,
    527 U.S. 627 (1999) ........................................... 9

*Nev. Dep't of Human Res. v. Hibbs*,
    538 U.S. 721 (2003) ...................................... 8, 9, 10, 11, 12, 17

*Best Canvas Prods. Supplies, Inc. v. Ploof Truck Lines, Inc.*,
    713 F.2d 618 (11th Cir. 1983) ........................................... 20

*Cooper v. Meridian Yachts*,
    575 F.3d 1151 (11th Cir. 2009) ........................................... 20

*Gamble v. Fla. Dep't of Health Rehab. Serv*,
    779 F.2d 1509 (11th Cir. 1986) ........................................... 8

*Garrett v. Univ. of Ala. at Birmingham*,
    344 F.3d 1288 (11th Cir. 2003) ........................................... 7

*Garrett v. Univ. of Ala. Bd. Of Trs.*,
    193 F.3d 1214 (11th Cir. 1999) ........................................... 19

*Horsley v. Feldt*,
　　304 F.3d 1125 (11th Cir. 2002) ..........................................................2

*Lawrence v. Dunbar*,
　　919 F.2d 1525 (11th Cir. 1990) ..........................................................5

*Morrison v. Amway Corp.*,
　　323 F.3d 920 (11th Cir. 2003) ............................................................4

*Page v. Hicks*,
　　773 F. App'x 514 (11th Cir. 2019) .....................................................7

*Pouyeh v. UAB Dep't of Ophthalmology*,
　　625 F. App'x 495 (11th Cir. 2015) .....................................................7

*Sinaltrainal v. Coca-Cola Co.*,
　　578 F.3d 1252 (11th Cir. 2009) ....................................................4, 21

*Summit Med. Assocs., P.C. v. Pryor*,
　　180 F.3d 1326 (11th Cir. 1999)..................................................... x, 4

*Hill v. Federal Trade Comm'n*,
　　124 F.2d 104 (5th Cir. 1941) .............................................................20

*Spurrier v. Bd. of Trs. of the Univ. of Ala.*,
　　No. 2:16-CV-00151-RDP, 2016 U.S. Dist. LEXIS 102389 (N.D.
　　Ala. Aug. 4, 2016) .......................................................................7, 19

**Statutes**

28 U.S.C. § 1291 .......................................................................................x

29 U.S.C. § 2611 ....................................................................... 14, 21, 22

29 U.S.C. § 2612........................................................... 11, 14, 20, 21, 22

29 U.S.C. §§ 2611 to 2618.......................................................................14

National Defense Authorization Act for Fiscal Year 2008, Pub. L.
　　110-181, § 585; 122 Stat. 3, 128 (2008)............................................14

Ala. Code § 16-47-1..................................................................................7

Ala. Code § 16-47-90................................................................................7

Ala. Code § 16-47-95 ............................................................7

**Other Authorities**

Fed. R. App. P. 4 ...............................................................x

Fed. R. App. P. 26.1 ..................................................... iii, iv

Fed. R. App. P. 32 ...........................................................25

11th Cir. R. 26.1-1 ......................................................... iii

153 Cong. Rec. H5258 (2007) ...........................................16

153 Cong. Rec. H15352 (2007) .........................................14

1987 Senate Labor Hearings, pt. 2 ......................................11

Bureau of Labor Statistics, U.S. Dept. of Labor, Employee Benefits in
State and Local Governments 17-26 (1994) ........................13

*Findings of the President's Commission on Care for America's
Returning Wounded Warriors*, 110th Cong. 43 (2007) ...............14, 15

H. R. Rep. No. 101-28, pt. 1 (1989) ....................................13

H. R. Rep. No. 103-8, pt. 2 (1993) ......................................11

Joint Hearing 100 ............................................................11

*The Family and Medical Leave Act: Extending Coverage to Military
Families Left at Home*, 110th Cong. 64 (2007) ....................15, 16, 17

## STATEMENT OF JURISDICTION

For the reasons stated below, the United States District Court for the Northern District of Alabama lacked subject-matter jurisdiction over this action because the Board is immune from Appellee Kristie Williams' ("Williams") claims pursuant to the Eleventh Amendment to the United States Constitution and the principles of sovereign immunity.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. This is an appeal of a decision of the United States District Court for the Northern District of Alabama, denying the Board's motion to dismiss based on Eleventh Amendment immunity. (*See* Memorandum Order and Order, Appendix Ex. 4). As such, the order is subject to immediate appeal pursuant to 28 U.S.C. § 1291. *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1334 (11th Cir. 1999) ("A district court's denial of a motion to dismiss on Eleventh Amendment immunity grounds is appealable immediately.").

The District Court issued its order denying the Board's motion to dismiss on March 22, 2023. The Board filed its notice of appeal on April 18, 2023, less than 30 days from the issuance of the order. Thus, the Board's appeal is timely. *See* Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES

1.  Whether the Board is immune from Williams' claims under the military caregiver provisions of the FMLA.

2.  Whether the District Court properly found that Williams took FMLA family-care leave when Williams did not plead that she took such leave and did not plead facts necessary to show that she was entitled to such leave.

## STATEMENT OF THE CASE

### I.    STATEMENT OF THE FACTS

Williams alleges that she was employed by the Board as a Research Associate at the University of Alabama at Birmingham ("UAB") from 2002 until her resignation effective August 31, 2020. (*See* Complaint, Appendix Ex. 2, at ¶¶ 6, 67-68). Williams claims that, in early May 2020, she informed UAB that she needed a leave of absence to care for her daughter, a member of the Marine Corps who was stationed in Hawaii and allegedly suffered a sexual assault. (*See* id. at ¶ 10-11). She completed a "Military Family Medical Leave of Absence Request Form" dated May 7, 2020, stating that she was the "[p]arent of a covered service member with a serious injury or illness incurred in the line of duty." (*See id*. at ¶ 12; Motion to Dismiss, Appendix Ex. 3, at 31[1]). Williams claims that, on May 20, 2020, the Board approved her for Military Qualifying Exigency Leave pursuant to the Family Medical Leave Act ("FMLA") through June 22, 2020. (*See* App. Ex. 2 at ¶ 17).

In her Complaint, Williams alleges that the Board required her to continue working during her FMLA leave and that the Board counseled and disciplined her for poor work performance during the FMLA leave. (*See id*. at ¶¶ 18-61). She claims

---

[1] The Board attached to its motion to dismiss the Military Family Medical Leave of Absence Request Form that Williams completed. (*See* App. Ex. 3 at 31). Because the request form is central to Williams' claim, it was referenced in Williams' Complaint, and its authenticity is unchallenged, the form was properly presented to the district court (without conversion of the motion to dismiss into a motion for summary judgment), and this Court may similarly consider the request form during this appeal. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

that she returned to her regular work on or about August 1, 2020, following which her supervisors again counseled her about her work performance. (*See id*. at ¶¶ 62-65). Williams alleges that she resigned her employment on or about August 15, 2020 (with her last day being on or about August 31, 2020), based on her belief that the Board would terminate her employment. (*See id*. at ¶¶ 66-68).

## II.   <u>COURSE OF PROCEEDINGS AND DISPOSITION BELOW</u>

Williams initiated this action against the Board on June 17, 2022. (*See id*.). In her Complaint, she asserts claims for interference and retaliation under the Family and Medical Leave Act. (*See id*.). She bases her FMLA interference claim on her allegations that the Board required her to perform her job duties during the leave of absence, took counseling/disciplinary actions against her during the leave of absence, and failed to restore her to the same position following the leave. (*See id.* at ¶¶ 69-106). She bases her FMLA retaliation claim on the same allegations, as well as additional counseling following her return to work and her resignation. (*See id.* at ¶¶ 107-168).

On July 29, 2022, the Board moved to dismiss Williams' action, asserting that, because Williams' claims arise under the military caregiver provisions of the FMLA, the Board is immune from her claims under the Eleventh Amendment to the United States Constitution and the principles of sovereign immunity. (*See* App. Ex. 3).

On March 22, 2023, the United States District Court for the Northern District

of Alabama entered a Memorandum Opinion and Order denying the Board's motion to dismiss. (*See* App. Ex. 4). In its order, the district court found that Williams took a leave of absence under the family-care provisions of the FMLA, not the military caregiver provisions, and the Board is not immune from claims arising under the FMLA's family-care provisions. (*See id*. at 6-10).

On April 18, 2023, the Board filed a Notice of Appeal of the district court's Memorandum Opinion and Order. (*See* Notice of Appeal, Appendix Ex. 5).

## III.  <u>STANDARD OF REVIEW</u>

"[A] district court's denial of a motion to dismiss on Eleventh Amendment grounds is a question of law subject to de novo review." *See Summit Medical Assocs.*, 180 F.3d at 1334.  "Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms, 'facial' and 'factual' attacks." *Morrison v. Amway Corp*., 323 F.3d 920, 924 n.5 (11th Cir. 2003). "In a facial attack, . . . the court examines whether the Complaint has sufficiently alleged subject matter jurisdiction. As it does when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court construes the Complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged by in the Complaint as true." *Sinaltrainal v. Coca-Cola Co*., 578 F.3d 1252, 1260 (11th Cir. 2009). "A factual attack challenges 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Id.*

(quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

The allegations of Williams' Complaint on their face demonstrate that the district court lacked subject matter jurisdiction. Thus, while the Board disputes many of Williams' factual allegations, it accepts them as true for purposes of this appeal, which may be considered a facial challenge to the district court's jurisdiction.

## SUMMARY OF ARGUMENT

The district court erred when it found that the Board is not entitled to sovereign immunity from Williams' claims. Based on the principles announced by the Supreme Court in *Hibbs* and *Coleman*, it is plain that Congress did not validly abrogate the States' sovereign immunity from claims arising under the military caregiver provisions of the FMLA because, when enacting those provisions, Congress did not cite any intent to combat unconstitutional discrimination (such as gender discrimination) or find that the States have engaged in a pattern of unconstitutional discrimination. Without these findings, Congress cannot validly abrogate the States' sovereign immunity, and it did not do so impliedly or expressly for the military caregiver provisions of the FMLA.

While the district court found that Williams actually took a leave of absence under the FMLA family-care provisions (to which sovereign immunity does not apply), this finding was in error. In her Complaint, Williams affirmatively pled, and thus admitted, that she took military caregiver leave, not family leave, and the district

court was without authority to make a factual finding contrary to Williams' own allegations.

Further, Williams did not plead facts necessary to show that she was entitled to leave under the family-care provisions of the FMLA. The family-care provisions of the FMLA require that, to use leave to care for an adult son or daughter, the son or daughter must be incapable of self-care because of a disability, but Williams did not plead facts to establish that her daughter suffered from a disability or was incapable of self-care. Thus, the district court erred by making a factual finding that contradicted the allegations of the Complaint.

Based on the allegations of the Complaint, it is clear that Williams requested and utilized leave under the military caregiver provisions of the FMLA. It is equally clear that the Board is immune from claims arising under those provisions. Therefore, this Court should reverse the district court and find that the Board is immune from Williams' claims.

## ARGUMENT

## I. THE BOARD IS IMMUNE FROM WILLIAMS' MILITARY CAREGIVER LEAVE CLAIMS.

As described below, the Board is a state entity entitled to the protections of the Eleventh Amendment. Because the Eleventh Amendment bars Williams' claims under the military caregiver provisions of the FMLA, this Court should find that Williams' claims against the Board are barred by sovereign immunity.

**A.     The Board is a State Entity with Eleventh Amendment Immunity.**

The Board was created by the State of Alabama to operate a public university, including a school of medicine and numerous hospitals. *See* Ala. Code §§ 16-47-1, 16-47-90, and 16-47-95. State universities and the boards that govern them, such as the Board, are state agencies for purposes of Eleventh Amendment immunity. *See Page v. Hicks*, 773 F. App'x 514, 518 (11th Cir. 2019) ("[S]tate universities, such as UAB, are 'arms of the state' and thus are entitled to Eleventh Amendment immunity."); *Pouyeh v. UAB Dep't of Ophthalmology*, 625 F. App'x 495, 498 (11th Cir. 2015) ("The Board [of Trustees of the University of Alabama] is a state agency."); *Garrett v. Univ. of Ala. at Birmingham*, 344 F.3d 1288, 1290 (11th Cir. 2003) (recognizing the Board as a state agency for purposes of Eleventh Amendment immunity).

As an agency of the state of Alabama, the Board is afforded immunity by the Eleventh Amendment to the United States Constitution. *See Page*, 773 F. App'x at 517 (finding the Board immune under the Eleventh Amendment from a claim under 42 U.S.C. § 1983); *Pouyeh*, 625 F. App'x at 498 (finding the Board immune from a claim under 42 U.S.C. § 1981); and *Spurrier v. Bd. of Trs. of the Univ. of Ala.*, No. 2:16-CV-00151-RDP, 2016 U.S. Dist. LEXIS 102389, at *10-*11 (N.D. Ala. Aug. 4, 2016) (finding the Board immune from a claim under the self-care provision of the FMLA).

**B.    Standards for Eleventh Amendment Immunity.**

> [T]he sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment. Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments.

*Alden v. Maine*, 527 U.S. 706, 713 (1999). As recognized by the Supreme Court: "The Constitution never would have been ratified if the States and their courts were to be stripped of their sovereign authority except as expressly provided by the Constitution itself." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 239 n.2 (1985).

"Absent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court." *Gamble v. Fla. Dep't of Health Rehab. Serv*, 779 F.2d 1509, 1511 (11th Cir. 1986). "Congress may . . . abrogate such immunity in federal court *if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment*." *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003) (emphasis added).

> Congress may not abrogate the States' sovereign immunity pursuant to its Article I power over commerce. Congress may, however, abrogate

States' sovereign immunity through a valid exercise of its § 5 power, for "the Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment."

*Id.* at 727 (quoting *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976)) (internal citation omitted).

"Section 5 grants Congress the power 'to enforce' the substantive guarantees of §1 of the Amendment by 'appropriate legislation.' The power to enforce 'includes the authority both to remedy and to deter violation[s] of rights guaranteed' by §1." *Coleman v. Ct. of Appeals*, 566 U.S. 30, 36 (2012) (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 365 (2001)) (internal quotations omitted). "In other words, Congress may enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct." *Hibbs*, 538 U.S. at 727-28. However, "[t]o ensure Congress' enforcement powers under §5 remain enforcement powers, as envisioned by the ratifiers of the Amendment, rather than powers to redefine the substantive scope of §1, Congress 'must tailor' legislation enacted under §5 to 'remedy or prevent' 'conduct transgressing the Fourteenth Amendment's substantive provisions.'" *Coleman*, 566 U.S. at 36 (quoting *Fla. Prepaid Postsecondary Ed. Expense Bd. v. College Savings Bank*, 527 U.S. 627, 639 (1999)) (internal quotations omitted). "Valid § 5 legislation must exhibit 'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" *Hibbs*, 538 U.S. at 728 (quoting *City*

*of Boerne v. Flores*, 521 U.S. 507, 520 (1997)).

"Whether a congressional Act passed under §5 can impose monetary liability upon States requires an assessment of both the 'evil or wrong that Congress intended to remedy,' and the means Congress adopted to address that evil." *Coleman*, 566 U.S. at 36 (quoting *City of Boerne*, 521 U.S. at 520) (internal citation and quotations omitted). Specifically, "in order to authorize private individuals to recover money damages against the States, there must be a pattern of discrimination by the States which violates the Fourteenth Amendment, and the remedy imposed by Congress must be congruent and proportional to the targeted violation." *Garrett*, 531 U.S. at 374. Thus, in order to validly exercise its Section 5 authority to abrogate state sovereign immunity, Congress must meet the congruence-and-proportionality test by (1) identifying unconstitutional conduct by States and (2) enacting an appropriate remedy for those violations. *See Coleman*, 566 U.S. at 36; *Hibbs*, 538 U.S. at 728-29.

C.  **Prior Application of Eleventh Amendment Immunity to the FMLA.**

The Supreme Court has previously considered the application of Eleventh Amendment immunity to the FMLA on two occasions, finding that Congress validly abrogated the States' immunity as to the family-care provisions of the FMLA, but not the self-care provisions.

1. **Congress Validly Abrogated Eleventh Amendment Immunity for the Family-Care Provisions of the FMLA.**

In *Hibbs*, the Court found that Congress validly abrogated the States' immunity as to the family-care provisions of the FMLA (29 U.S.C. § 2612(a)(1)(C)). The Court found that these provisions "ai[m] to protect the right to be free from gender-based discrimination in the workplace." *Id.* at 728. "According to evidence that was before Congress when it enacted the FMLA, States continue to rely on invalid gender stereotypes in the employment context, specifically in the administration of leave benefits," including differential application of maternity and paternity leave policies. *Id.* at 730-31.

> Congress had evidence that, even where state laws and policies were not facially discriminatory, they were applied in discriminatory ways. It was aware of the "serious problems with the discretionary nature of family leave," because when "the authority to grant leave and to arrange the length of that leave rests with individual supervisors," it leaves "employees open to discretionary and possibly unequal treatment." H. R. Rep. No. 103-8, pt. 2, pp 10-11 (1993). Testimony supported that conclusion, explaining that "the lack of uniform parental and medical leave policies in the work place has created an environment where [sex] discrimination is rampant." 1987 Senate Labor Hearings, pt. 2, at 170 (testimony of Peggy Montes, Mayor's Commission on Women's Affairs, City of Chicago).

*Id.* at 732. "Congress determined: 'Historically, denial or curtailment of women's employment opportunities has been traceable directly to the pervasive presumption that women are mothers first, and workers second.'" *Id.* at 736 (quoting Joint Hearing 100).

The Court accordingly held: "the States' record of unconstitutional participation in, and fostering of, gender-based discrimination in the administration of leave benefits is weighty enough to justify the enactment of prophylactic § 5 legislation." *Id.* at 735. Further, "Congress' chosen remedy, the family-care leave provision of the FMLA, is 'congruent and proportional to the targeted violation.'" *Id.* at 737 (quoting *Garrett*, 531 U.S. at 374).

> By creating an across-the-board, routine employment benefit for all eligible employees, Congress sought to ensure that family-care leave would no longer be stigmatized as an inordinate drain on the workplace caused by female employees, and that employers could not evade leave obligations simply by hiring men. By setting a minimum standard of family leave for all eligible employees, irrespective of gender, the FMLA attacks the formerly state-sanctioned stereotype that only women are responsible for family caregiving, thereby reducing employers' incentives to engage in discrimination by basing hiring and promotion decisions on stereotypes.

*Id.* The Court accordingly held that Congress validly abrogated the States' immunity from claims under the FMLA family-care provisions. *See id.* at 740.

### 2. Congress did not Validly Abrogate Eleventh Amendment Immunity for the Self-Care Provisions of the FMLA.

Nine years later, the Supreme Court reached the opposite conclusion when it considered the self-care provision of the FMLA, finding that "suits against States under [the FMLA self-care] provision are barred by the States' immunity as sovereigns in our federal system." *Coleman*, 566 U.S. at 33. The Court found that "[t]he legislative history of the self-care provision reveals a concern for the

economic burdens on the employee and the employee's family resulting from illness-related job loss and a concern for discrimination on the basis of illness, not sex. . . . By contrast, with regard to family care Congress invoked concerns related to gender." *Id.* at 38. Specifically:

> When the FMLA was enacted, "ninety-five percent of full-time state- and local-government employees were covered by paid sick leave plans and ninety-six percent of such employees likewise enjoyed short-term disability protection." Brief for State of Texas et al. as Amici Curiae 13-14 (hereinafter Texas Brief) (citing Bureau of Labor Statistics, U.S. Dept. of Labor, Employee Benefits in State and Local Governments 17-26 (1994) (hereinafter BLS Rept.)). The evidence did not suggest States had facially discriminatory self-care leave policies or that they administered neutral self-care leave policies in a discriminatory way. And there is scant evidence in the legislative history of a purported stereotype harbored by employers that women take self-care leave more often than men. Congress considered evidence that "men and women are out on medical leave approximately equally." H. R. Rep. No. 101-28, pt. 1, p. 15 (1989) (hereinafter H. R. Rep.).

*Id.* at 37-38. The Court accordingly held that "the provision is not congruent and proportional to any identified constitutional violations." *Id.* at 39.

### D. The Eleventh Amendment Bars Claims Under the Military Caregiver Provisions of the FMLA.

The Supreme Court has not decided whether Congress validly abrogated Eleventh Amendment immunity for claims under the military caregiver provisions of the FMLA. But against the backdrop of *Hibbs* and *Coleman*, it is clear that no valid abrogation of immunity has occurred.

### 1. Congressional Purpose of the FMLA Military Caregiver Amendments.

As legislative history makes clear, Congress enacted the FMLA military caregiver amendments of the FMLA to alleviate the burdens experienced by servicemembers' families associated with active military duty, not to combat discrimination based on gender or any protected class.

The amendments, which were included as Section 585 of the National Defense Authorization Act for Fiscal Year 2008, *see* Pub. L. 110-181, § 585; 122 Stat. 3, 128 (2008); *see also* 29 U.S.C. §§ 2611 to 2618, were proposed to implement "recommendations of the President's Commission on Care for America's Returning Wounded Warriors" (the "Commission"), 153 Cong. Rec. H15352 (2007). In the Commission's July 2007 report, it proposed to "[s]trengthen family support programs including . . . extending the Family and Medical Leave Act for up to six months for spouses and parents of the seriously injured." The Commission stated:

> In our survey, 33 percent of active duty, 22 percent of reserve component, and 37 percent of retired/separated service members report that a family member or close friend relocated for extended periods of time to be with them while they were in the hospital.

> 21 percent of active duty, 15 percent of reserve component, and 24 percent of retired/separated service members say friends or family gave up a job to be with them or act as their caregiver.

*Findings of the President's Commission on Care for America's Returning Wounded Warriors*, 110th Cong. 43, at 57 (2007).

The Commission was co-chaired by Former Secretary of the Department of

Health and Human Services Donna E. Shalala. When presenting the report to the

House Committee on Veterans Affairs, Secretary Shalala articulated the reason for

the amendment:

> We . . . recommend that Congress amend the Family and Medical Leave
> Act (FMLA) to extend unpaid leave from 12 weeks to up to six months
> for a family member of a servicemember who has a combat-related
> injury and meets other FMLA eligibility requirements. According to
> initial findings of research conducted by the Commission,
> approximately two-thirds of injured servicemembers reported that their
> family members or close friends stayed with them for an extended time
> while they were hospitalized; one in five gave up a job to do so. . . .
> Extending the Family and Medical Leave Act for these families will
> make a tremendous difference in the quality of their lives.

*Id*. at 6-7 (statement of Hon. Donna E. Shalala).

During a September 2007 hearing before the U.S. House of Representatives

Subcommittee on Workforce Protections, Rep. Lynn Woolsey (chair of the

subcommittee and sponsor of the military caregiver amendments) described the need

for the amendments:

> A majority of military spouses work outside of the home, and they, too,
> must balance work and family, among other things, to put food on the
> table and to provide support for the needs of their families. But they
> face additional challenges because their lives have been disrupted by
> multiple deployments involving not only active servicemembers but
> those in the National Guard and the Reservists. There is so much that
> faces the military family that the very least we can do is pass legislation
> to help them.

*The Family and Medical Leave Act: Extending Coverage to Military Families Left

at Home*, 110th Cong. 64, at 2 (2007) (statement of Hon. Lynn Woolsey).

Sen. Christopher Dodd (one of the drafters of the legislation) added:

> For the first time, this bill offers family and medical leave not just to parents, spouses and children, but to next of kin, including siblings. Families, not the government, should decide for themselves who takes on the work of caring for their injured loved ones.

*Id.* at 8 (statement of Hon. Christopher Dodd).

Concerning a similar provision (the Altmire-Udall amendment to H.R. 1585),

co-sponsor Rep. Jason Altmire stated:

> [O]ngoing military engagements and extended deployments impact not only our troops, but also the families of our brave men and women in uniform. Military families are struggling to balance everything from their financial obligations to child care responsibilities. I offer this amendment to address this and provide military families with some relief. This amendment allows the immediate family of military personnel to use Family Medical Leave Act time for issues directly arising from deployment and extended deployments. The wife of a recently deployed military servicemember could use the Family Medical Leave Act to arrange for child care. The husband of a servicemember could use the Family Medical Leave Act to attend predeployment briefings and family support sessions. The parents of a deployed servicemember could take Family Medical Leave Act time to see their raised child off or welcome them back home.

153 Cong. Rec. H5258 (2007).

Entirely absent from both the amendments themselves and the legislative history surrounding the amendments are: (1) any reference to § 5 of the Fourteenth Amendment; (2) any stated intent for these amendments to prevent or deter discrimination based on gender or any other protected category; or (3) any finding of a pattern of discrimination by the States that violates the Fourteenth Amendment.

## 2. Congress did not Validly Abrogate Eleventh Amendment Immunity for the Military Caregiver Provisions of the FMLA.

Because Congress did not base the FMLA military caregiver amendments on an intent to combat unconstitutional discrimination or find that the States have engaged in a pattern of unconstitutional discrimination, Congress did not validly abrogate the States' immunity from claims under these amendments. *See Hibbs*, 538 U.S. at 726-40; *Coleman*, 566 U.S. at 36-39; *Garrett*, 531 U.S. at 374.

This case is much more akin to *Coleman* than *Hibbs*; indeed, immunity is even clearer in this case than in *Coleman*. In *Hibbs*, the Supreme Court found that Congress validly abrogated immunity for the FMLA family-care provisions because of: (1) specific findings aiming those provisions against "gender-based discrimination in the workplace"; and (2) "the States' record of unconstitutional participation in, and fostering of, gender-based discrimination in the administration of leave benefits." *Hibbs*, 538 U.S. at 728, 735. However, for the military caregiver amendments, Congress made *no* connection between the amendments and a history of gender-based discrimination; instead, all Congressional findings and intent were directed toward the burdens experienced by family of servicemembers associated with active military duty. According to the Congressional statements cited above, such burdens existed *regardless* of gender, without a disproportionate impact on any gender or position within familial units. *See The Family and Medical Leave Act:*

*Extending Coverage to Military Families Left at Home*, 110th Cong. 64, at 8 (2007) (statement of Hon. Christopher Dodd) ("For the first time, this bill offers family and medical leave not just to parents, spouses and children, but to next of kin, including siblings. Families, not the government, should decide for themselves who takes on the work of caring for their injured loved ones.").

Because these amendments lack any link to gender or other unconstitutional discrimination, Congress did not validly abrogate the States' immunity, as in *Coleman*. *See* 566 U.S. at 38 ("The legislative history of the self-care provision reveals a concern for the economic burdens on the employee and the employee's family resulting from illness-related job loss and a concern for discrimination on the basis of illness, not sex."). Further, as made clear by *Coleman*, Congressional findings of gender discrimination as to *other* portions of the FMLA do not mean that Congress validly abrogated immunity as to the military caregiver provisions specifically. *See id.* at 36-37 ("In enacting the FMLA, Congress relied upon evidence of a well-documented pattern of sex-based discrimination in family-leave policies. . . . The same cannot be said for requiring the States to give all employees the opportunity to take self-care leave."). Therefore, given the complete lack of Congressional findings that the military caregiver provisions target unconstitutional discrimination or that the States have engaged in a pattern of unconstitutional discrimination, Congress did not validly abrogate sovereign immunity for the

military caregiver provisions of the FMLA.

   **E.    The Board is Immune from Williams' Claims.**

It is indisputable that the Board is a state entity and entitled to the protections of the Eleventh Amendment. *See infra* at Argument § I.A. It is further indisputable that neither the Board nor the State of Alabama have waived sovereign immunity from claims under the FMLA. *See, e.g.*, *Garrett v. Univ. of Ala. Bd. Of Trs.*, 193 F.3d 1214, 1219 (11th Cir. 1999) ("[W]e hold in this case that Congress did not have the authority to abrogate the sovereign immunity of the states on claims arising under the" self-care provision of the FMLA.), *rev'd on other grounds Garrett*, 531 U.S. at 374; *Spurrier*, 2016 U.S. Dist. LEXIS 102389, at *10-*11 ("The State of Alabama has not consented to suit in federal court. . . . Thus, in order for Plaintiff to prosecute her case against the Board, the FMLA must allow the State of Alabama and its agents to be sued in federal court."). Accordingly, the Board is immune from Williams' claims.

**II.   THE DISTRICT COURT ERRED BY FINDING THAT WILLIAMS TOOK FMLA FAMILY-CARE LEAVE, NOT MILITARY CAREGIVER LEAVE.**

Despite the Board's immunity from Williams' claims, the district court declined to dismiss this action, instead finding that Williams took a leave of absence under the family-care provisions of the FMLA (for which sovereign immunity does not apply), not the military caregiver provisions. (*See* App. Ex. 4 at 6-10). For two

reasons, the district court's finding was in error.

## A. Williams Requested and Took FMLA Military Caregiver Leave.

First, Williams specifically pled that she requested and utilized military caregiver leave under the FMLA, not family-care leave. Williams alleges that she requested leave by completing a "Military Family Medical Leave of Absence Request Form" and that the Board approved her for "Military Qualifying Exigency Leave." (*See* App. Ex. 2 at ¶¶ 12, 17). Nowhere in Williams' Complaint did she allege that she took leave under the family-care provisions of the FMLA or reference the statutory subsection for the family-care provisions (29 U.S.C. § 2612(a)(1)(C)).

Despite the lack of any reference to family-care leave in Williams' Complaint, the district court, acting *sua sponte*, made a finding "that Ms. Williams used family leave under 29 U.S.C. § 2612(a)(1)(C), not active-duty leave under 29 U.S.C. § 2612(a)(1)(E)." (*See* App. Ex. 4 at 6). This finding was contrary to the allegations of the Complaint and in error.

> "[T]he general rule [is] that a party is bound by the admissions in his pleadings." *Best Canvas Prods. Supplies, Inc. v. Ploof Truck Lines, Inc*., 713 F.2d 618, 621 (11th Cir. 1983). "Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." *Hill v. Federal Trade Comm'n*, 124 F.2d 104, 106 (5th Cir. 1941).

*Cooper v. Meridian Yachts*, 575 F.3d 1151, 1177-78 (11th Cir. 2009). Because Williams alleged that she requested and utilized FMLA military caregiver leave, not family-care leave, Williams is bound by this allegation; at the motion-to-dismiss

20

stage, the district court was similarly bound to honor this admission. *See Sinaltrainal*, 578 F.3d at 1260 ("[T]he court construes the Complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged by in the Complaint as true."). The district court's finding of fact contrary to the facts alleged in Williams' Complaint was error.

### B. Williams did not Plead Necessary Facts to Establish that she Took FMLA Family-Care Leave.

Further, Williams' Complaint does not allege the facts necessary to support a finding that she took FMLA family-care leave. The family-care provision states: "Subject to section 103 and subsection (d)(3), an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). However, the FMLA defines "son or daughter" as "a biological, adopted, or foster child, a stepchild, a legal ward, or a child of a person standing in loco parentis, who (A) is under 18 years of age; or (B) 18 years of age or older and incapable of self-care because of a mental or physical disability." 29 U.S.C. § 2611(12).

Williams' Complaint does not allege facts to establish that, at the time of the FMLA request, her daughter met the statutory definition of "son or daughter." While Williams did not state the age of her daughter, she did state that her daughter was serving in the United States Marine Corps. Thus, Williams did not allege facts to

21

show that subsection A of the definition applies (and it presumably does not).

Therefore, for Williams to be eligible for family-care leave to care for her daughter, her daughter must have been "incapable of self-care because of a mental or physical disability." 29 U.S.C. § 2611(12)(B). Williams' Complaint, however, is entirely devoid of facts to plausibly allege: (1) that her daughter suffered from a mental or physical disability; or (2) that her daughter was incapable of self-care because of such disability. Accordingly, the Complaint did not contain the necessary factual foundation for the district court to find that Williams took family-care leave, and the court was in error to do so.

By contrast, the military caregiver provisions of the FMLA do not contain the same "incapable of self-care" restriction. Instead, "an eligible employee who is the . . . parent . . . of a covered servicemember shall be entitled to a total of 26 workweeks of leave during a 12-month period to care for the servicemember." 29 U.S.C. § 2612(a)(3). The definition of "covered servicemember" does not require that the servicemember be "incapable of self-care," *see* 29 U.S.C. § 2611(15), and the Board has not disputed that Williams pled sufficient facts to show that her daughter may qualify as a "covered servicemember."

By contradicting the allegations of the Complaint and acting without the required factual predicate, the district court committed error by finding that Williams took family-care leave instead of military caregiver leave. And because the Board is

immune from claims under the FMLA military caregiver provisions, the district court erred by denying the Board's motion to dismiss.

## CONCLUSION

Because Williams' claims arise under the military caregiver provisions of the FMLA, and because claims under such provisions are barred by sovereign immunity, this Court should reverse the district court and find that the Board is immune from Williams' claims and that her Complaint must be dismissed in its entirety, with prejudice.

Respectfully submitted this 12th day of July, 2023.

/s/ B. Tyler White
B. Tyler White
**JACKSON LEWIS P.C.**
501 Riverside Avenue, Suite 902
Jacksonville, Florida 32202
Telephone: 904-638-2665
Tyler.White@jacksonlewis.com

Lynlee Wells Palmer
Daniel B. Harris
**JACKSON LEWIS P.C.**
Synovus Center
800 Shades Creek Parkway, Suite 870
Birmingham, Alabama 35209
Direct Dials: 205-332-3096/3097
Facsimile: 205-332-3131
Lynlee.Palmer@jacksonlewis.com
Daniel.Harris@jacksonlewis.com

David R. Mellon
Spencer A. Kinderman
Emily T. Vande Lune
**THE UNIVERSITY OF ALABAMA
SYSTEM UAB OFFICE OF COUNSEL**
1720 2nd Avenue South, Suite AB 820
Birmingham, Alabama  35294
Telephone:  205-934-3474
drmellon@uasystem.edu
skinderman@uasystem.edu
evandelune@uasystem.edu

**ATTORNEYS FOR APPELLANT THE
BOARD OF TRUSTEES OF THE
UNIVERSITY OF ALABAMA**

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS AND TYPE-STYLE REQUIREMENTS

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 5,707 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as calculated by the word-counting feature of Microsoft Word. The foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) and is presented in proportionally spaced font typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ B. Tyler White*
Counsel for Appellant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 12th day of July, 2023, a true and correct copy of the above and foregoing was electronically filed utilizing the Court's CM/ECF system, which will automatically send notice to the following:

Blake C. Edwards, Esq.
Nicole D. Edwards, Esq.
**EDWARDS & EDWARDS ATTORNEYS AND MEDIATORS, PLLC**
3603 Pine Lane, Suite C
Bessemer, AL 35022

**Attorneys for Appellee Kristie Williams**

*/s/ B. Tyler White*
Counsel for Appellant