## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

## DOCKET NO.: 23-11286

---

KRISTIE WILLIAMS,

PLAINTIFF-APPELLEE,

v.

THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA,

DEFENDANT-APPELLANT.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
DISTRICT COURT CIVIL ACTION NO.: 2:22-CV-00758-MHH

---

## BRIEF OF APPELLEE KRISTIE WILLIAMS

---

COUNSEL FOR APPELLEE:
Blake C. Edwards, Esq.
Nicole D. Edwards, Esq.
**EDWARDS & EDWARDS**
**ATTORNEYS AND MEDIATORS, PLLC**
3603 Pine Lane SE, Suite C
Bessemer, Alabama 35022
Tel:  (205) 549-1379
Fax: (205) 719-4033
E-mail: nicole@edwardsattys.com
           blake@edwardsattys.com

## **APPELLEES CERTIFICATE OF INTERESTED PARTIES**

Pursuant to Eleventh Circuit Rule 26.1-1, the undersigned counsel of record for the Appellee hereby certifies the following is a complete list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, corporations (including subsidiaries, conglomerates, affiliates, parent corporations and any publicly held corporation which owns 10% or more of the party's stock), and other identifiable legal entities related to a party that has an interest in this case.

1. Kristie Williams – Appellee

2. The Board of Trustees of the University of Alabama– Appellant

3. Honorable, Madeline H. Haikala United States District Court for the Northern District of Alabama – District Court Judge

4. Nicole D. Edwards – Counsel for Appellee

5. Blake C. Edwards – Counsel for Appellee

6. Daniel H. Harris – Counsel for Appellant

7. Spencer A. Kinderman – Counsel for Appellant

8. David R. Mellon – Counsel for Appellant

9. Lynlee Wells Palmer – Counsel for Appellant

10. Emily T. Vande Lune – Counsel for Appellant

11. Tyler B. White – Counsel for Appellant

12. Edwards & Edwards Attorneys and Mediators, PLLC Law firm of Counsel, Appellee

13.     Jackson Lewis, P.C. Law Firm of Counsel, Appellant

## STATEMENT REGARDING ORAL ARGUMENT

This case presents important issues concerning the interpretation of the Servicemember Family Leave amendment to the Family Medical Leave Act, concerning sovereign immunity. Appellee, Kristie Williams, respectfully requests oral argument, which Appellee believes would assist this Court in determination of the issues.

## <u>TABLE OF CONTENTS</u>

APPELLEES CERTIFICATE OF INTERESTED PERSONS……………………..ii

STATEMENT REGARDING ORAL ARGUMENTS……………………………iii

TABLE OF AUTHORITIES…………………………………………………vi

STATEMENT OF JURISDICTION…………………………………………ix

STATEMENT OF THE ISSUES…………………………………………..1

STATEMENT OF THE CASE…………………………………………….2

   I.     COURSE OF PROCEEDINGS & DISPOSITION BELOW……………..2

   II.    STATEMENT OF THE FACTS……………………………………….2

STANDARD OF REVIEW………………………………………………..9

SUMMARY OF ARGUMENT…………………………………………...10

ARGUMENT………………………………………………………...12

   I.     UAB IS NOT IMMUNE FROM WILLIAMS CLAIMS
         REGARDING FMLA VIOLATIONS…………………………...12

   II.    DISTRICT COURT DID NOT ERR BY FINDING THAT
        WILLIAMS TOOK FMLA FAMILY-CARE LEAVE, NOT
        MILITARY CAREGIVER LEAVE……………………………..14

   III.   UAB ARGUES TWOMBLY/IQBAL PLEADING ISSUES
        FOR THE FIRST TIME ON APPEAL…………………………18

       A.    UAB RAISES A FACIAL ATTACK ON WILLIAM'S
            COMPLAINT FOR THE FIRST TIME ON APPEAL……………..19

IV.   THE CONGRESSIONAL INTENT BEHIND PASSING THE
      MILITARY LEAVE AMENDMENT TO THE FMLA…………………...21

V.    ARTICLE I § 8 OF THE UNITED STATES CONSTITUTION
      ABROGATES UAB'S CLAIM TO SOVEREIGN IMMUNITY………....25

CONCLUSION………………………………………………………………...26

CERTICIATE OF COMPLIANCE……………………………………………27

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Ardestani v. INS*, 502 U.S. 129, 135, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991)…...22

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)………………………………………20

 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)…………………………...20

*Bush v. Aqua Dimensions Plumbing Servs., Inc.*, No. 2:19-cv-14163
(S.D. Fla. Aug. 16, 2019)………………………………………………………………18

*Cannon v. Univ. of Chicago,* 441 U.S. 677, 696-97, 99 S. Ct. 1946, 1957
(1979)……………………………………………………………………………...23

*Commodity Futures Trading v. G7 Advisory Services*, 406 F. Supp. 2d
1289, 1297 (S.D. Fla. 2005)……………………………………………………....23

*Cooner v. Ala. State Bar*, No. 2:15-CV-0064-SLB (N.D. Ala. Sep. 8, 2015)…….19

*Dunn v. City of Fort Valley*, 464 F. Supp. 3d 1347, 1369 (M.D. Ga. 2020)……...24

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 604 (5th Cir. 1981)……………17

*Euroboor BV v. Grafova*, 2:17-cv-02157-KOB,
(N.D. Ala. Sep. 23, 2021)………………………………………………………………17

*Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 964 n.2 (11th Cir. 1997)………….17

*Frederick v. Brown*, 2015 WL 4756765, (S.D. Ga. August 10, 2015)………....…19

*Harrell v. Florida Bar,* 608 F.3d 1241 (11th Cir. 2010)…………………………..17

*Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)……………………………...19

*Hurley v. Moore*, 233 F.3d 1295, 1297 (11th Cir. 2001)………………………….21

*Int'l Bhd. of Elec. Workers Local Union No. 474 v. NLRB,*
814 F.2d 697, 712 (D.C. Cir. 1987)………………………………………………….24

*Jacobs v. the Florida Bar*, 50 F.3d 901 (11th Cir. 1995)…………………………17

*King v. Moore,* 196 F.3d 1327, 1330 (11th Cir. 1999)……………………………21

*Madison v. Dep't of Juvenile Justice*, Civil Action File No.
1:18-CV-00484-TWT-JFK (N.D. Ga. Aug. 13, 2018)……………………………19

*McIlwain v. Burnside*, No. 19-11080 (11th Cir. Oct. 9, 2020)……………………21

*Meyer v. Fay Servicing, LLC*, 385 F. Supp. 3d 1235, 1238 (M.D. Fla. 2019)……20

*Miedema v. Maytag Corporation*, 450 F.3d 1322, 1328 (11th Cir. 2006)……..…24

*Miles v. Apex Marine Corp.*, 498 U.S. 19, 32, 111 S. Ct. 317, 326 (1990)……….23

*Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721 (2003)……….12

*Parfitt v. Fla. Gulf Coast Univ. Bd. of Trs.*, Case No.:
2:19-cv-727-FtM-38NPM (M.D. Fla. Apr. 15, 2020)………………………….21

*Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d
808 (1997)………………………………………………………………………17

*Rubenstein v. Fla. Bar*, 69 F. Supp. 3d 1331, 1344 n.2 (S.D. Fla. 2014)…………24

*Rural Electrification Admin. v. Cent. La. Elec. Co.,* 354 F.2d 859, 865
(5th Cir. 1966)……………………………………………………………………...9

Sea Services of the Keys, Inc. v. State of Florida, 156 F. 3d 1151, 1153
(11th Cir. 1998). ………………………………………………………………..20

*Seaborn v. State of Fla., Dep't of Corr.*, 143 F.3d 1405, 1407
(11th Cir. 1998)……………………………………………………………...20

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72-73 (1996)……………………20

*Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease
Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010)……………………19

*Smith v. Bellsouth Telecomms., Inc.*, 273 F.3d 1303, 1313-14
(11th Cir. 2001)……………………………………………………………15, 16

*Torres v. Texas Department of Public Safety*, 597 U.S. (2022)…………………..25

*United States v. Thigpen,* 4 F.3d 1573, 1577 (11th Cir. 1993)
*Warshauer v. Solis*, 577 F.3d 1330, 1335 (11th Cir. 2009)………………………24

*Walker v. Jones,* 10 F.3d 1569, 1572 (11th Cir. 1994)……………………………21

## STATUTES

28 U.S.C. § 41…………………………………………………………………..ix

28 U.S.C. § 1291…………………………………………………………………..ix

28 U.S.C. § 1331, 1343(4)…………………………………………………………...17

28 U.S.C. § 2201 and 2202 …………………………………………………………...ix

29 C.F.R. § 825.126(b)………………………………………………………………15

29 U.S.C. § 2611(12)(B)……………………………………………………………18

29 U.S.C. § 2612(a)(1)(C)…………………………………12, 13, 14, 15, 16, 18, 22, 23

29 U.S.C. § 2612(a)(1)(D)…………………………………………………………12, 13

29 U.S.C. § 2612(a)(1)(E)………………………………………………………....13

29 U.S.C. § 2612(a)(3)……………………………………………………13, 14, 15, 22, 23

## RULES

Federal Rule of Civil Procedure 12(b)(6)………………………………...…19, 20

## OTHER AUTHORITIES

United States Constitution Article I §8 Cl. 11-16………………………………...25

United States Constitution Article I § 8 Cl. 12-13………………………………..25

Family and Medical Leave Act of 1993……………………………….....…..ix, 21

## STATEMENT OF JURISDICTION

On June 17, 2022, Kristie Williams ("Williams") filed suit against her former employer, The Board of Trustees of the University of Alabama (hereinafter "UAB"), for FMLA violations. Her claims were brought under the Family and Medical Leave Act of 1993 for Interference with Leave and Retaliation with taking leave. Jurisdiction was based on 28 U.S.C. § 1331, 1343(4) and 28 U.S.C. § 2201 and 2202.

On March 22, 2023, the District Court denied UAB's Motion to Dismiss Williams complaint on Eleventh Amendment immunity grounds. This Court has jurisdiction founded upon 28 U.S.C. § 1291. Jurisdiction lies in this Court as this appeal concerns decisions for the United States District Court for the Northern District of Alabama. 28 U.S.C. § 41.

## **STATEMENT OF THE ISSUES**

1.      Did the District Court err by determining that Williams FMLA leave under the Military Caregiver provision is linked to the Family Care Leave provisions abrogating the Board's claim of 11th Amendment Sovereign Immunity?

2.      Did UAB improperly raise Twombly/Iqbal pleading deficiencies for the first time on appeal?

3.      Did the District Court err by deciding that Williams pled facts giving her a claim for family-care FMLA leave although her complaint pled military FMLA leave?

1

## STATEMENT OF THE CASE

### I.    COURSE OF PROCEEDING AND DISPOSITION BELOW

Williams filed suit against her former employer, UAB on June 17, 2022. (Doc. 1). Her complaint claims that she took continuous FMLA leave to care for her daughter, a member of the United States Marine Corps, who was sexually assaulted by a superior officer. She claims UAB interfered with her continuous leave by forcing her to work while on FMLA leave, by emailing her over 600 times and disciplining her 3 times, constructively discharging her. *(Id.* at ¶83.) On March 22, 2023, the District Court denied UAB's factual challenge to Williams Complaint in which it alleged it has sovereign immunity as an arm of the state (Docs. 6 & 12).

### II.    STATEMENT OF THE FACTS

Appellee, Williams's lawsuit is proper under the Family Medical Leave Act of 1993 ("FMLA"), "providing injunctive and other relief against violations of the FMLA in employment." (Doc. 1, ¶ 1). The Defendant, The Board of Trustees at the University of Alabama, ("UAB"), is a recipient of federal funding and is an employer pursuant to the FLMA. (Doc. 1, ¶ 2). UAB is a proper FMLA entity in that it is engaged in an industry affecting commerce, an employer within the meaning of the FMLA, and employs fifty (50) or more employees within a seventy-five (75) mile radius of where it employed Williams. (Doc. 1, ¶ 2).

Williams began working for UAB in or around 2002 as a Research Associate. (Doc. 1, ¶ 6). In or around March 2020, Williams was promoted to Program Director-Grants Administration-Research Department of Medicine in Clinical Immunology and Rheumatology. (Doc. 1, ¶ 7). As a condition of the promotion, Williams was placed on a probationary period of 90 days. (Doc. 1, ¶ 8). In 2020, Williams' daughter was stationed in Hawaii while serving in the United States Marine Corps. (Doc. 1, ¶ 9). In or around May 2, 2020, William's daughter was sexually assaulted by a superior officer. (Doc. 1, ¶ 10). On May 7, 2020, Williams completed a "Military Family Medical Leave of Absence Request Form," provided by UAB in which she requested continuous leave. (Doc. 1, ¶ 12). In or around May 12, 2020, Williams left for Hawaii to care for her daughter. (Doc. 1, ¶ 13).

Between May 12, 2020 and May 20, 2020, Williams continued to work because she had not yet been approved by UAB for FMLA leave. (Doc. 1, ¶ 14). On May 18, 2020, an email between a UAB Human Resources ("HR") employee, Chelsea Burks ("Burks"), confirmed this agreement that Williams would work until her FMLA leave was approved. Burks stated, "If you would not mind, please keep track of the time that you are working. This is not to judge how much you are working, but will help us make sure you are compensated appropriately in case the leave group doesn't approve your request." (Doc. 1, ¶ 15).

On May 20, 2020, UAB approved Williams for Military Qualifying Exigency Leave pursuant to the FMLA through June 22, 2020. On May 20, 2020, Williams received emails about scheduled Zoom calls with Doug Bentley ("Bentley"), Division Administrator Lead. (Doc. 1, ¶ 18). On May 21, 2020, Williams emailed Burks, informing her that she had been approved for FMLA leave. (Doc. 1, ¶ 19). On May 22, 2020, Burks replied to Williams's email stating, "Hi Kristie! I am working on a plan and will be in touch as soon as possible." (Doc. 1, ¶ 20). A few days after Williams was granted leave, she emailed Burks and Bentley, asking if she should transfer her pending work assignments to another employee while on FMLA leave. (Doc. 1, ¶ 21).

Williams never received a response from Burks and Bentley. (Doc. 1, ¶ 22).

On May 26, 2020, Williams emailed Burks to inform her that she was still working on grants that were being assigned to her on FMLA leave. (Doc. 1, ¶ 23). On May 28, 2020, Williams emailed Burks to inform UAB that she felt like she was hurting rather than helping UAB because she was required to work while on FMLA leave. (Doc. 1, ¶ 24). Williams was constantly receiving emails from UAB co-workers, her division head, and her immediate superior, all while on continuous FMLA leave. (Doc. 1, ¶ 25). In fact, in 2020, Williams received over 600 emails while she was on continuous FMLA leave at UAB. (Doc. 1, ¶ 26). The emails consisted of not only asking Williams for information, but requiring her to work on

projects while trying to help her daughter through a traumatic sexual assault. (Doc. 1, ¶ 27). Williams stated to several UAB employees on several occasions via email, that she was on FMLA leave and did not think she should be working. (Doc. 1, ¶ 28). On May 30, 2020, Williams ninety (90) day probationary period ended. (Doc. 1, ¶ 29).

In or around June 12, 2020, Bentley and Burks held a telephone conversation with Williams, which was followed up by a letter. (Doc. 1, ¶ 30). This conversation took place during Williams FMLA leave. (Doc. 1, ¶ 30). During these communications Bentley and Burks told Williams that her ninety (90) day probationary period was being extended until August 28, 2020. (Doc. 1, ¶ 31). Thus, in or around June 12, 2020, UAB disciplined Williams for alleged poor work performance, while being out on FMLA leave. (Doc. 1, ¶ 32). Bentley's purported reasons for the probation extensions were that that "COVID-19 pandemic" limited the department's ability to evaluate Williams performance since most work was done remotely. (Doc. 1, ¶ 33).

However, Williams was not supposed to be "working remotely" due to COVID-19, nor was she supposed to be working at all, because she was supposed to be on continuous FMLA leave. (Doc. 1, ¶ 34). Burks and Bentley criticized the quality and performance of Williams work while being on FMLA leave and placed her on three (3) "development plans." (Doc. 1, ¶ 35).

These development plans suggested that Williams improve her, "attention to detail, communication, and responding quickly and accurately to the Division's faculty and staff." (Doc. 1, ¶ 36). These three (3) development plans and Williams second ninety (90) day probationary period were all devised and implanted during Williams' continuous FMLA leave. (Doc. 1, ¶ 37).

Williams complained to Human Resources that UAB told her that she would be given a plan to transfer her assignments to a co-worker while on FMLA leave, but this plan never came to fruition. (Doc. 1, ¶ 38). Williams also complained to UAB that she: 1) felt pressured to work while on continuous FMLA leave; 2) should not have received any developmental plans while on FMLA leave; and 3) should not have been placed on a second probationary status while on FMLA leave. (Doc. 1, ¶ 39).

Williams told Donresa Craig ("Craig"), the HR employee who approved her FMLA leave, that her FMLA leave was continuous and not intermittent. (Doc. 1, ¶ 40). Williams also asked Craig if her FMLA status was ever changed without her knowledge. (Doc. 1, ¶ 41). Williams never heard a response from Craig concerning her FMLA status. (Doc. 1, ¶ 42). After the implementation of the "development plans", UAB hired two (2) employees to purportedly, "help lead or complete many of Williams day-to-day duties in order to allow her to focus on the action plans." (Doc. 1, ¶ 43).

In or around June 15, 2020, Williams had a phone call with UAB's James Freeman ("Freeman"), in Employee Relations to discuss her FMLA leave. (Doc. 1, ¶ 44). Williams told Freeman that UAB mishandled her FMLA leave. (Doc. 1, ¶45). Freeman responded by saying, "We don't want to go there." (Doc. 1, ¶ 46). Over the next several weeks, Williams had several telephone calls with UAB Employee Relations personnel and the School of Medicine HR liaison. (Doc. 1, ¶47). The calls involved an attempt to find a resolution between Williams and the Division. (Doc. 1, ¶ 48).  In or around June 17, 2020, Bentley told Williams that weekly Zoom calls should be implanted to track Williams' progress. (Doc. 1, ¶ 49).

However, these Zoom calls were never set up by Williams' division. (Doc. 1, ¶ 50). Williams reached out to the Division Director, Dr. Lou Bridges ("Bridges") to have a conversation because she believed the information given to the UAB leadership was inaccurate. (Doc. 1, ¶ 51). Bridges declined to speak with Williams. (Doc. 1, ¶ 52). Also, Williams attempted to speak with the new Division Director, Dr. Saag, in July of 2020. (Doc. 1, ¶ 52). Dr. Saag declined to speak with Williams. (Doc. 1, ¶ 54). Williams had a conversation with UAB Employee Relations and the School of Medicine HR liaison, Tammie Collins ("Collins"). Collins claimed that Williams had agreed to work while she was on FMLA leave. (Doc. 1, ¶ 55). Williams responded by saying she could provide email documentation proving she did not want to work while on FMLA leave. (Doc. 1, ¶ 56). Williams was informed that

UAB had seen the emails and did not need any more information. (Doc. 1, ¶ 57). UAB kept telling Williams that she was to blame and to complete the corrective action plan with her department. (Doc. 1, ¶ 58).

By June 26, 2020, Williams had completed two of the three development plans UAB created for her. (Doc. 1, ¶ 59). Williams was able to complete all the corrective action plans ahead of UAB's schedule. (Doc. 1, ¶ 60). From the time Williams returned from continuous FMLA leave until August 1, 2020, UAB required her to work on the corrective action plans. (Doc. 1, ¶ 61). On August 1, 2020, UAB allowed Williams to return to her regular work routine. (Doc. 1, ¶ 62). Also, on August 1, 2020, Williams had a conference call with Bentley and Dr. Saag. (Doc. 1, ¶ 63). Dr. Saag informed Williams that she would have to make a "360 degree" turn in her work performance in thirty (30) days to remain in her position with UAB. (Doc. 1, ¶ 64). Dr. Saag told Williams that he did not believe she could accomplish this "360 degree" task. (Doc. 1, ¶ 65). Williams strongly believed that UAB was going to terminate her employment. (Doc. 1, ¶ 66). On or around August 15, 2020, in lieu of being terminated, which her division made clear was imminent, Williams was constructively discharged from her position at UAB. (Doc. 1, ¶ 67). In or around August 31, 2020, Williams worked her last at UAB. (Doc. 1, ¶ 68).

## STANDARD OF REVIEW

"We review *de novo* the district court's denial of a state's motion to dismiss based on Eleventh Amendment immunity. *See Seminole Tribe of Florida v. Florida,* 11 F.3d 1016, 1021 (11th Cir. 1994), *aff'd,* 517 U.S. 44, 116 S. Ct. 1114, 134 L.Ed.2d 252 (1996)." *Sea Services of the Keys, Inc. v. State of Florida*, 156 F.3d 1151, 1153 (11th Cir. 1998).

## SUMMARY OF ARGUMENT

Williams FMLA claims to care for her daughter are immune from UAB's defense of sovereign immunity, as it relates to UAB being free from suit as an arm of the state. UAB asserts that Williams claims for leave under the "Servicemember Family Leave" provision of the FMLA are subject to Eleventh Amendment sovereign immunity. Precisely, UAB contends that Congress did not validly abrogate Eleventh Amendment immunity when passing and enacting the 2008 Amendments to the FMLA, in which the Servicemember Family Leave provision is contained. UAB's rationale for this argument is that Congressional subcommittee reports and finds pre-passage of the 2008 amendments does not opine about the deleterious effects of sex discrimination towards women and how passage of the amendments would help remedy such discrimination.

UAB's logic follows: since the Congressional reports do not focus remedying sex discrimination as the reason for passing the 2008 amendments like the reports which focused on this issue when enacting the family-leave provision, then the Servicemember Family Leave provision is not immune from suit such as the family-leave provision. However, this Court must look to the plain language in the FMLA statue itself. The clear and concise language of the servicemember family leave provision, not only mirrors the language of the family-care leave provision but emboldens the ability for family members of active military members to take leave

to care for their loved ones while on active duty. Therefore, Congress validly abrogated sovereign immunity when it passed the 2008 amendments to the FMLA.

UAB argues that the District Court's decision to take the facts from Williams's complaint and interpret them to be claims for family-leave rather than Servicemember Family Leave was in error. However, the District Court, through years of 11th Circuit precedent, has the judicial power, to take Williams plausibly alleged facts, and apply them to the law. District Courts are at liberty to take a plaintiff's complaint and interpret their claims for relief as pled and are not bound by the legal titles or labels plaintiff's assign to their claims.

Lastly, UAB raises the argument that Williams's complaint did not contain facts plausibly alleging that her daughter fit the definition of a "child 18 years or older incapable of self-care." This argument was not raised during the Motion to Dismiss stage. Since, this argument is being raised for the first time on appeal this Court should decline to give it the slightest modicum of consideration.

# ARGUMENT

## I.    UAB IS NOT IMMUNE FROM WILLIAMS CLAIMS REGARDING FMLA VIOLATIONS

The District Court did not err by deciding that Williams requested Military leave against a state actor is immune from Eleventh Amendment sovereign immunity. It is now well established that a state has sovereign immunity when an employee files suit alleging a cause of action under the FMLA's self-care provision. The applicable statute for "self-care" is 29 U.S.C. § 2612(a)(1)(D) which states in pertinent part: An eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee. What is also well established is that a state cannot claim sovereign immunity when an employee brings a cause of action pursuant to the family-leave provision of the FMLA. (*Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721 (2003).

The family-leave provision of the FMLA 29 U.S.C. § 2612(a)(1)(C), provides in pertinent part: An eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period : (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

12

The most basic reading of the statute would indicate clearly that 29 U.S.C. § 2612(a)(1)(D), uses language relating solely to serious health condition of "the employee," rendering them unable to perform the functions of the position of "such employee," (emphasis added) and does not reference a "spouse," "son," "daughter," or "parent," of the employee whom the employee will have to provide care for because of the serious health condition of the employee's loved one.

However, in similar fashion, to 29 U.S.C. § 2612(a)(1)(C), the 2008 Amendments to the FMLA added 29 U.S.C. § 2612(a)(1)(E), uses language placing the emphasis of care not for the employee's own self but the employee's spouse, son, daughter, or parent who is on covered active duty.

In this case, the District Court correctly noted that the 2008 amendments added Servicemember Family Leave 29 U.S.C. § 2612(a)(3), expanding the family care provisions of §2612(a)(C) family leave provisions, "Structurally, Congress indicated that it does not consider "Servicemember Family Leave" a distinct category of leave like pregnancy leave, family leave, self-care leave, and active-duty leave because Congress did not place "Servicemember Family Leave" under §2612(a)(1) with those other categories of leave. The title "Servicemember Family Leave" adopts the "family leave" label for §2612(a)(1)(C) leave and inserts the word "servicemember" before that label, linking §2612(a)(1)(C) and §2612(a)(3).

By using the term "care" in §§ 2612(a)(1)(C) and 2612(a)(3), Congress likewise linked the two sections and indicated that §2612(a)(3) merely expands the duration of family leave when an employee uses that leave to care for a servicemember with a serious health condition." (Doc. 12, at 8). The language of the Servicemember Family Leave, places emphasis on caregivers for servicemembers "next of kin" (See §2612(a)(3)), clearly establishing that the provision was written for servicemembers to receive care from a family member, whether that be a spouse, cousin, uncle, aunt, etc. The Servicemember Family Leave provision is bereft of any mention or reference to a servicemember taking time off from active military duty to care for his or her own self. Therefore, Williams claims, pursuant to § 2612(a)(3), do not fall victim to Eleventh Amendment sovereign immunity as do claims brought under the self-care provisions of the FMLA.

## II.    DISTRICT COURT DID NOT ERR BY FINDING THAT WILLIAMS TOOK FMLA FAMILY-CARE LEAVE, NOT MILITARY CAREGIVER LEAVE

The District Court properly found that according to Williams' claims she took a leave of absence under the family-care provisions of the FMLA. Thus, properly denying UAB's motion stating it has 11th Amendment sovereign. immunity.

In regard to Williams' FMLA leave, her judicial complaint pled the following:

In 2020, Williams' daughter was stationed in Hawaii while serving in the United States Marine Corps. (Doc. 1, ¶ 9). In or around May 2, 2020, William's daughter was sexually assaulted by a superior officer. (Doc. 1, ¶ 10). On May 7, 2020, Williams completed a "Military Family Medical Leave of Absence Request Form," provided by UAB in which she requested continuous leave. (Doc. 1, ¶ 12). In or around May 12, 2020, Williams left for Hawaii to care for her daughter.

Based on these facts pled in Williams' complaint, the District Court held:

> Ms. Williams's request for leave "to care for her daughter" triggered family leave, not active-duty leave. Sexual assault is not a "qualifying exigency" relating to active-duty status like having to make financial arrangements for a tour of duty or receiving leave from a tour of duty for "rest and recuperation." 29 C.F.R. § 825.126(b); (Doc. 6-1). Sexual assault injures victims physically and psychologically, causing victims to need care. Thus, Ms. Williams used family-leave under § 2612(a)(1)(C) that could extend up to 26 weeks under § 2612(a)(3) if Ms. Williams's daughter's assault qualified as "serious injury or illness" to a "covered servicemember." (Doc. 12, at 9-10).

UAB asserts that this finding by the district court was impermissible.

However, district courts routinely, interpret the substance of plaintiffs' claims

despite specific labels a plaintiff may assign to their claims.

> The Eleventh Circuit interprets the FMLA broadly to ensure that employees may freely exercise their FMLA rights, instructing, "nomenclature counts less than substance" for purposes of determining the nature of an FMLA claim. And the substance of the FMLA . . . is that an employer may not do bad things to an employee who has exercised or attempted to exercise any rights under the statute." The FMLA prohibits employers from discriminating against employees who exercise their leave rights. *Id. BellSouth's* argument that its refusal to rehire is not a prohibited act is predicated on its assertion that *Smith* is not an "employee" under the FMLA. We have decided that *Smith*, a former employee who has applied for reemployment, is an "employee" under the FMLA.

*Smith v. Bellsouth Telecomms., Inc.*, 273 F.3d 1303, 1313-14 (11th Cir. 2001).

15

In this case, the District Court held that the substance of Williams' FMLA claim counted more than nomenclature. Much like the case in *Bellsouth* (*Id.*), the district court deciphered Williams' claims that she took leave to care for her daughter, an active military servicemember, triggered leave under the family-leave provision under §2612(a)(1)(C) despite pleading Williams completed a "Military Family Medical Leave of Absence Request Form," provided by UAB in which she requested continuous leave. (Doc. 1, ¶ 12).  UAB approved Williams for Military Qualifying Exigency Leave pursuant to the FMLA through June 22, 2020. (Doc. 1, ¶ 18). Despite completing a form titled "Military Family Leave of Absence Request Form," (Doc. 6-1, at 2) and pleading that Williams requested "Military Qualifying Exigency Leave." (Doc. 1, ¶ 17), the District Court came to a different conclusion as to the nature of Williams leave. The District Court looked to the specific facts Williams alleged rather than the legal theories.

Williams's daughter was stationed in Hawaii while serving in the United States Marine Corps. (Doc. 1, ¶ 9). In May 2020, Williams's daughter was sexually by a superior officer. (Doc. 1, ¶ 10). The District Court concluded that "Ms. Williams's request for leave "to care for her daughter," triggered family-care leave, not active-duty leave. "Sexual assault is not a "qualifying exigency" relating to active-duty status like having to make financial arrangements for a tour of duty or receiving leave from a tour of duty for "rest and recuperation." (Doc. 12, at 9-10).

16

The District Court determined that Williams pled facts establishing an actual request for family-care leave to care for her daughter, who incidentally is in the military.

> Courts must look to the *facts* alleged in the plaintiff's complaint-as opposed to the plaintiff's *legal theories*-to determine whether the plaintiff sufficiently stated a claim under a cause of action. *Euroboor BV v. Grafova*, 2:17-cv-02157-KOB, at *51 (N.D. Ala. Sep. 23, 2021). *E.g.*, *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 964 n.2 (11th Cir. 1997) ("The form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim") (*Id*).(quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 604 (5th Cir. 1981)).

The District Court was convinced that Williams's complaint alleged facts sufficient to state a claim under a family-care leave cause of action. Williams's characterization of FMLA leave as "Military Qualifying Exigency Leave was not as fundamental in Williams obligation to state a claim for which relief can be granted as the substance of her actual facts as pled. "The Court is "not bound by [Plaintiffs'] designation of [their] claims, and we look to the complaint to determine what claims, if any, [their] allegations support." *Rubenstein v. Fla. Bar*, 69 F. Supp. 3d 1331, 1344 n.2 (S.D. Fla. 2014) (citing Harrell v. Florida Bar, 608 F.3d 1241 (11th Cir. 2010) (citing *Jacobs v. the Florida Bar*, 50 F.3d 901 (11th Cir. 1995).

Therefore, the District Court did not err by ruling that Williams requested family-care leave based on the facts of her complaint and not the legal theories she assigned to her claims.

## III.    UAB ARGUES TWOMBLY/IQBAL PLEADING ISSUES FOR THE FIRST TIME ON APPEAL

For the first time on appeal, UAB alleges that Williams's complaint deficiently pled, whether her child met the statutory definition of "daughter" pursuant to 29 U.S.C. § 2612(a)(1)(C). Precisely, UAB posits the premise that Williams did not meet the definition of 29 U.S.C. § 2611(12)(B), defining daughter as being "18 years of age or older and incapable of self-care because of a mental or physical disability." Further, UAB contends that Williams did not plead facts to allege her daughter suffered from mental or physical disability or was incapable of self-care.

As it relates to Williams' complaint concerning her "daughter," the District Court did not err by holding that Williams complaint met the requisite definition of daughter as outlined in the FMLA statutes. Williams did not need to give a overly elaborate explanation proving how her child fits the statutory definition of "daughter." For example, in *Bush v. Aqua Dimensions Plumbing Servs., Inc.*, No. 2:19-cv-14163-Rosenberg/Maynard, at *1 (S.D. Fla. Aug. 16, 2019), Defendant filed a Motion to Dismiss Plaintiff's Complaint alleging he took family FMLA leave to care for his ailing wife. Defendant's argued Plaintiff was not legally married to his wife at the time he took FMLA leave, because according to Defendants, Plaintiff told co-workers he was never officially married.  Thus, she did not meet the definition of wife or spouse under existing Florida law.  The court

denied the motion to dismiss, stating "In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." (*Id.*) (Citing *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citing *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)).

Thus, the District Court was correct in accepting Williams's factual claims as true and UAB should be barred from arguing new issues on appeal outside of its' original 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

## A.    UAB RAISES A FACIAL ATTACK ON WILLIAM'S COMPLAINT FOR THE FIRST TIME ON APPEAL

In its' Motion to Dismiss, UAB states, "Defendant's motion is properly characterized as a factual challenge because Defendant contests the existence of subject matter jurisdiction." (Doc. 6, at 2). On appeal, UAB is now arguing that it is bringing a facial attack to the allegations of Williams' Complaint. (See Doc. 17, at 5). Defendants' attack based on Eleventh Amendment immunity is a facial attack on subject matter jurisdiction. (the "motions, as they relate to immunity, are facial attacks on the Complaint because the Court's resolution of the immunity question does not depend on adjudicating the merits of the case"). *Madison v. Dep't of Juvenile Justice*, CV-No. 1:18-CV-00484-TWT-JFK (N.D. Ga. Aug. 13, 2018) (Citing *Cooner v. Ala. State Bar*, No. 2:15-CV-0064-SLB (N.D. Ala. Sep. 8, 2015); *Frederick v. Brown*, 2015 WL 4756765, at *3 (S.D. Ga. August 10, 2015).

19

In its new facial attack, UAB argues, "Williams's Complaint however, is entirely devoid of facts to plausibly allege: (1) that her daughter was suffered from a mental or physical disability; or (2) that her daughter was incapable of self-care because of such disability." (Doc. 17, at 22). While not labeled as such, this assertion has the markings of a *Twombly/Iqbal* argument. This argument for failure to state a claim for which relief can be granted, should have been made at the district court level in UAB's Motion to Dismiss.

As stated earlier, Motions to Dismiss asserting Eleventh Amendment Immunity are facial attacks. These facial attacks are for a failure to state a claim in Plaintiff's complaint, placing them under the now well-known pleading standard of the United States Supreme Court cases of *Twombly* and *Iqbal*.

> "The Eleventh Amendment restricts the judicial power under Article III." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72-73 (1996). So asserting Eleventh Amendment immunity tests subject-matter jurisdiction. *Seaborn v. State of Fla., Dep't of Corr.*, 143 F.3d 1405, 1407 (11th Cir. 1998). Rule 12(b)(1) governs motions to dismiss for lack of subject matter. *Meyer v. Fay Servicing, LLC*, 385 F. Supp. 3d 1235, 1238 (M.D. Fla. 2019). These challenges take two forms—facial and factual. *Id.* at 1239. On facial attacks, like this one, "the Court takes the allegations in the complaint as true." *Id.* Motions to dismiss for failure to state a claim follow the familiar Rule 12(b)(6) standard. A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim allows a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

20

*Parfitt v. Fla. Gulf Coast Univ. Bd. of Trs.*, Case No.: 2:19-cv-727-FtM-38NPM, at *3 (M.D. Fla. Apr. 15, 2020).

UAB should have raised this argument that Williams did not plead the necessary factual foundation that Williams took family-care leave at the district court level. Williams's anticipates that UAB will argue on reply that, its burgeoning argument for failure to state a claim is ripe because of the district court's Memorandum Opinion and Order (Doc. 12) which gave rise to this argument. However, this argument would be superfluous because UAB was free to launch this attack when it filed its' Motion to Dismiss.

Lastly, this argument was raised for the first time on appeal and should not be considered. "But we will not consider arguments raised for the first time on appeal" *McIlwain v. Burnside*, No. 19-11080, at *11 (11th Cir. Oct. 9, 2020) *Hurley v. Moore*, 233 F.3d 1295, 1297 (11th Cir. 2001) ("*See King v. Moore,* 196 F.3d 1327, 1330 (11th Cir. 1999). Arguments raised for the first time on appeal are not properly before this Court. *See Walker v. Jones,* 10 F.3d 1569, 1572 (11th Cir.), *cert. denied,* 511 U.S. 1111, 114 S. Ct. 2111, 128 L.Ed.2d 671 (1994). ").

Therefore, since UAB did not raise pleading argument supra, in its Motion to Dismiss with the District Court, this Court should not entertain the is argument now for the first time on appeal.

## IV.    THE CONGRESSIONAL INTENT BEHIND PASSING THE MILITARY LEAVE AMENDMENT TO THE FMLA

While Williams' does not want to act as Alice and fall down the rabbit hole,

she will briefly respond to the crux of UAB's argument: The intent behind
Congress, when enacting the Servicemember Family Leave amendment to the
FMLA, was not to remedy archaic sex discrimination towards women like the
intent behind the family-leave provision of the FMLA. UAB's logic follows,
"since no Congressional report, study, or opinion, references the need to remedy
past sex discrimination towards women by passing the 2008 Amendments,
Congress did not intend to abrogate Eleventh Amendment sovereign immunity."

Courts must look to the plain language of a statute when determining its
interpretation and meaning:

> "The starting point in statutory interpretation is the language of the statute
> itself." *Ardestani v. INS*, 502 U.S. 129, 135, 112 S. Ct. 515, 116 L.Ed.2d
> 496 (1991) (internal quotation marks and alterations omitted). If the
> "language at issue has a plain and unambiguous meaning with regard to the
> particular dispute in the case," and "the statutory scheme is coherent and
> consistent," the inquiry is over. *Robinson v. Shell Oil Co.*, 519 U.S. 337,
> 340, 117 S. Ct. 843, 136 L.Ed.2d 808(1997) (internal quotation marks
> omitted). In determining whether a statute is plain or ambiguous, we
> consider "the language itself, the specific context in which that language is
> used, and the broader context of the statute as a whole." *Id.* at 341, 117 S.
> Ct. 843.

*Warshauer v. Solis*, 577 F.3d 1330, 1335 (11th Cir. 2009).

When looking at the plain and unambiguous meaning of 29 U.S.C. §
2612(a)(3), a few things plainly link it to the family care leave provisions
enumerated in 29 U.S.C. §2612(a)(1)(C): 1) The title of the amendment is
Servicemember Family Leave; and 2) this code section allows, "an eligible
employee who is the spouse, son, daughter, or next of kin of a covered

22

servicemember shall be entitled to a total of 26 workweeks of leave during a 12-month period to care for the servicemember. The plain and unambiguous meaning from Congress was placing an emphasis on active military servicemembers being cared for by someone other than themselves, not the servicemembers taking leave to care for themselves.

This Court should presume that Congress knew the language specified in the family and self-care leave provisions of the FMLA when it passed the 2008 amendments, giving us §2612(a)(3). "Courts assume that "Congress is aware of existing law when it passes legislation." *Miles v. Apex Marine Corp.,* 498 U.S. 19, 32, 111 S. Ct. 317, 326 (1990) (citing *Cannon v. Univ. of Chicago,* 441 U.S. 677, 696-97, 99 S. Ct. 1946, 1957 (1979))." *Commodity Futures Trading v. G7 Advisory Services*, 406 F. Supp. 2d 1289, 1297 (S.D. Fla. 2005).

Thus, Congress was aware of the statutory language in the family and self-care leave provisions, and carefully chose language for family members of service men and women to take family care leave, comparable to §2612(a)(1)(C). As the district court correctly pointed out, §2612(a)(3) adds the words "next of kin." The wording "next of kin" allows more opportunities for "family members" to care for service members. If anything, one could make the plausible argument that the Servicemember Family Leave provision increases the provisions of §2612(a)(1)(C).

UAB places a great emphasis on committee reports and opinions of the legislature given before the 2008 Amendments were passed. UAB's point is that since the committee members did not express in their reports that the purpose behind the passage of the Amendments was to stamp out centuries of sex discrimination towards women and that Congress had no intention of abrogating Eleventh Amendment immunity for states. Courts are not bound by editorial comments from Congresspeople or facts from committee reports.

> Moreover, this Circuit previously explained that "`[w]hile a committee report may ordinarily be used to interpret unclear language contained in a statute, a committee report cannot serve as an *independent statutory source having the force of law.'" Miedema v. Maytag Corporation*, 450 F.3d 1322, 1328 (11th Cir. 2006) *United States v. Thigpen,* 4 F.3d 1573, 1577 (11th Cir. 1993) (en banc) (quoting *Int'l Bhd. of Elec. Workers Local Union No. 474 v. NLRB,* 814 F.2d 697, 712 (D.C. Cir. 1987)); *cf. Rural Electrification Admin. v. Cent. La. Elec. Co.,* 354 F.2d 859, 865 (5th Cir. 1966) ("Certainly, the demands of Congressional Committees do not have the force of law."). Thus, "`courts have no authority to *enforce* principles gleaned *solely* from legislative history that has no statutory reference point.'" *U.S. v. Thigpen, 4 F.3d 1573 at 1577(11th Cir. 1993)* (quoting *Int'l Bhd. of Elec. Workers,* 814 F.2d at 712).

Other district courts in this Circuit have added that:

"However, the Court is not concerned with congressional reports or other sorts of legislative history. No, what matters are the words that Congress used when it wrote the statute." *Dunn v. City of Fort Valley*, 464 F. Supp. 3d 1347, 1369 (M.D. Ga. 2020)

Therefore, this Court should not be bound by reports written by legislators before the passage of the 2008 Amendments. What counts are the words the

legislators chose when they amended the FMLA to augment the ability to care for one's family by passing the Servicemember Family Leave Provision.

## V.    ARTICLE I § 8 OF THE UNITED STATES CONSTITUTION ABROGATES UAB'S CLAIM TO SOVEREIGN IMMUNITY

Should this Court find that Williams's leave as pled in her complaint (Doc. 1) fall under the umbrella of servicemember family leave, an alternative argument can be raised regarding sovereign immunity. Under Article I § 8 clauses 1, and 12-13, of the United States Constitution, Congress has the power "to raise and support Armies." "Congress has since, the founding era, directed raising and maintaining the national military, including at the expense of state sovereignty. We consequently hold that, as part of the plan of the Convention, the States waived their immunity under Congress' Article I power "to raise and support Armies" and "provide and maintain a Navy." *Torres v. Texas Department of Public Safety*, 597 U.S. (2022). The broad powers of Article I § 8 give Congress broad powers in order to "provide for the common defense." The passage of the servicemember family leave provision allows for "next of kin" to care for military members who are providing for the common defense. The care provided to these military members is done so in order to support and maintain their health. In other words, the care helps "provide for and maintain an Army" or "provide and maintain a Navy." (See Article I § 8, cls. 1, 11-16).

Thus, when Williams's left to care for her daughter, a United States Marine, she was caring for a servicemember who "provides for common defense." Therefore, UAB has no immunity when it comes to national military policy.

## **CONCLUSION**

For the foregoing reasons, the judgment of the District Court denying UAB's motion to dismiss should be upheld. This case should proceed to discovery in the District Court.

Respectfully submitted,

*/s/ Nicole D. Edwards*
/s/ Blake C. Edwards
*Attorneys for Appellee*

OF COUNSEL:
EDWARDS & EDWARDS
ATTORNEYS AND MEDIATORS, PLLC
3603 Pine Lane SE, Suite C
Bessemer, Alabama 35022
Tel:  (205) 549-1379
Fax: (205) 719-4033
E-mail: nicole@edwardsattys.com
        blake@edwardsattys.com

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)</u>

1.    This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 29(d) because it contains 6,228 words, excluding the parts of the brief exempted by Fed. R. App. 32(f), as calculated by the word-counting feature of Microsoft Word 365.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: August 11, 2023                          */s/ Nicole D. Edwards*
                                                                  OF COUNSEL

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record:

Lynlee Wells Palmer
Daniel B. Harris
JACKSON  LEWIS  P.C.
Synovus Center
800 Shades Creek Parkway, Suite 870
Birmingham, Alabama  35209
Direct Dials: 205-332-3096/3097
Lynlee.Palmer@jacksonlewis.com
Daniel.Harris@jacksonlewis.com

B. Tyler White
JACKSON LEWIS P.C.
501 Riverside Avenue, Suite 902
Jacksonville, Florida  32202
Telephone: 904-638-2665
Tyler.White@jacksonlewis.com

David R. Mellon
Spencer A. Kinderman
Emily T. Vande Lune
THE UNIVERSITY OF ALABAMA SYSTEM
UAB OFFICE OF COUNSEL
1720 2nd  Avenue South, Suite AB 820
Birmingham, Alabama  35294
Telephone: 205-934-3474
drmellon@uasystem.edu
skinderman@uasystem.edu
evandelune@uasystem.edu

/s/ Nicole D. Edwards
OF COUNSEL