# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT
# NO. 23-11286

_____

## KRISTIE WILLIAMS

**Plaintiff-Appellee,**

v.

## THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA

**Defendant-Appellant.**

_____

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

_____

## REPLY BRIEF OF APPELLANT THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA

B. Tyler White
**JACKSON LEWIS P.C.**
501 Riverside Avenue, Suite 902
Jacksonville, Florida  32202
Telephone:  904-638-2665
Tyler.White@jacksonlewis.com

Lynlee Wells Palmer
Daniel B. Harris
**JACKSON LEWIS P.C.**
Synovus Center
800 Shades Creek Parkway, Suite 870
Birmingham, Alabama  35209
Direct Dials:  205-332-3096/3097
Facsimile:  205-332-3131
Lynlee.Palmer@jacksonlewis.com
Daniel.Harris@jacksonlewis.com

David R. Mellon
Spencer A. Kinderman
Emily T. Vande Lune
**THE UNIVERSITY OF ALABAMA
SYSTEM UAB OFFICE OF COUNSEL**
1720 2nd Avenue South, Suite AB 820
Birmingham, Alabama  35294
Telephone:  205-934-3474
drmellon@uasystem.edu
skinderman@uasystem.edu
evandelune@uasystem.edu

**ATTORNEYS FOR APPELLANT THE
BOARD OF TRUSTEES OF THE
UNIVERSITY OF ALABAMA**

## <u>APPELLANT'S CERTIFICATE OF INTERESTED PERSONS</u>

Appellant The Board of Trustees of the University of Alabama ("the Board" or "Appellant"), pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, hereby submits its Certificate of Interested Persons and certifies that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1.  Edwards, Blake C., Counsel for Appellee;

2.  Edwards, Nicole D., Counsel for Appellee;

3.  Edwards & Edwards Attorneys and Mediators, PLLC, Law Firm of Counsel for Appellee;

4.  Haikala, Honorable Madeline H., United States District Judge for the Northern District of Alabama;

5.  Harris, Daniel B., Counsel for Appellant;

6.  Jackson Lewis, P.C., Law Firm of Counsel for Appellant;

7.  Kinderman, Spencer A., Counsel for Appellant;

8.  Mellon, David R., Counsel for Appellant;

9.  Palmer, Lynlee Wells, Counsel for Appellant;

10.    The Board of Trustees of The University of Alabama, Appellant;

11.    Vande Lune, Emily T., Counsel for Appellant;

12.    White, B. Tyler, Counsel for Appellant;

13.    Williams, Kristie, Appellee.

Appellant The Board of Trustees of The University of Alabama is organized under the laws of the State of Alabama, and, as a governmental entity, is exempt from the requirements of Fed. R. App. P. 26.1. Notwithstanding this, the Board states as follows:

No parent, subsidiary, or affiliate of the Board has issued shares or debt securities to the public.

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

## **TABLE OF CONTENTS**

APPELLANT'S CERTIFICATE OF INTERESTED PERSONS .......................... iii

Table of Authorities ................................................................................. vi

ARGUMENT ...............................................................................................1

    I.   THE   BOARD   IS   IMMUNE   FROM   WILLIAMS'   MILITARY CAREGIVER LEAVE CLAIMS. ......................................................................1

    II.   THE  DISTRICT  COURT  ERRED  BY  FINDING  THAT  WILLIAMS TOOK  FMLA  FAMILY-CARE  LEAVE,  NOT  MILITARY  CAREGIVER LEAVE. ...................................................................................................6

    III.  THE STATE OF ALABAMA DID NOT WAIVE IMMUNITY FOR FMLA MILITARY CAREGIVER CLAIMS UNDER THE MILITARY CLAUSES OF THE CONSTITUTION. ......................................................................9

CONCLUSION ........................................................................................13

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS AND TYPE-STYLE REQUIREMENTS ...............................15

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Blatchford v. Native Village of Noatak*,
   501 U.S. 775 (1991) ............................................................................12

*Coleman v. Ct. of Appeals*,
   566 U.S. 30 (2012) ......................................................................1, 2, 4

*Nev. Dep't of Human Res. v. Hibbs*,
   538 U.S. 721 (2003) ..................................................................1, 2, 11

*PennEast Pipeline Co., LLC v. New Jersey*,
   141 S. Ct. 2244 (2021) ......................................................................11

*Seminole Tribe of Fla. v. Florida*,
   517 U.S. 44 (1996) ............................................................................11

*Torres v. Texas Dep't of Pub. Safety*,
   142 S. Ct. 2455 (2022) ..........................................................10, 11, 12

*Dean Witter Reynolds, Inc. v. Fernandez*,
   741 F.2d 355 (11th Cir. 1984) ............................................................8

*JCC, Inc. v. Commodity Futures Trading Comm'n*,
   63 F.3d 1557 (11th Cir. 1995) ............................................................9

*Smith v. Bellsouth Telecommms., Inc.*,
   273 F.3d 1303 (11th Cir. 2001) ..........................................................6

*United States v. Thigpen*,
   4 F.3d 1573 (11th Cir. 1993) ..............................................................3

*Warshauer v. Solis*,
   577 F.3d 1330 (11th Cir. 2009) ..........................................................3

*Bush v. Aqua Dimensions Plumbing Serv*s.,
   No. 2:19-cv-14163, 2019 U.S. Dist. LEXIS 138585 (S.D. Fla. Aug.
   16, 2019) ............................................................................................8

*Euroboor B.V. v. Grafova*,
    No. 2:17-cv-02157-KOB, 2021 U.S. Dist. LEXIS 182157 (N.D.
    Ala. Sept. 23, 2021) ................................................................6

*Kirksey v. Schindler Elevator Corp.*,
    No. 15-0115-WS-N, 2016 U.S. Dist. LEXIS 149636 (S.D. Ala.
    Oct. 28, 2016) ........................................................................8

**Statutes**

U.S. Const., Art. I, § 8, cls. 12-13 .......................................................9, 10

29 U.S.C. § 2601 ...................................................................................5

29 U.S.C. § 2611 ...................................................................................7

29 U.S.C. § 2612 ................................................................................5, 7

38 U.S.C. § 4323 .................................................................................12

Cal. Gov. Code § 12945.2 ...................................................................12

Colo. Rev. Stat. § 8-13.3-503 .............................................................12

Colo. Rev. Stat. 8-13.3-504 ................................................................12

Conn. Gen. Stat. § 31-51ll ..................................................................12

Mass. Gen. Laws ch. 175M § 1 ..........................................................12

Mass. Gen. Laws ch. 175M § 2 ..........................................................12

N.Y. Comp. Codes R. & Regs. tit. 12 § 380-2.3 ................................12

Wash. Rev. Code § 49.77.030 .............................................................12

**Other Authorities**

Fed. R. App. P. 32 ...............................................................................15

Fed. R. App. P. 26.1 ........................................................................iii, iv

11th Cir. R. 26.1-1 ...............................................................................iii

## ARGUMENT

Williams cannot dispute that the FMLA military caregiver provisions have absolutely nothing to do with gender discrimination (or combatting a history of gender discrimination by the States), and Congress did not validly abrogate the States' immunity from such claims. Instead, Williams merely seeks to compare the military caregiver provisions to the FMLA family-care provisions and to USERRA, but such comparisons are contrary to the Supreme Court's immunity analyses and do nothing to defeat the Board's immunity.

Further, the district court improperly reformed Williams' factual allegations, not merely her legal theories, when it found that Williams requested and took family-care leave instead of military caregiver leave. The court was without authority to assume facts not pled by Williams when making this finding, and the cases cited by Williams do not permit such assumptions. This Court should reverse the district court and dismiss this case based on the Board's sovereign immunity.

## I.    THE BOARD IS IMMUNE FROM WILLIAMS' MILITARY CAREGIVER LEAVE CLAIMS.

Because the Board is a state entity (a fact that Williams concedes (*see* Doc. 21 at § I), it is immune from Williams' claims arising under the FMLA military caregiver provisions. As described in the Board's principal brief, the Supreme Court has clearly described the States' immunity from FMLA claims in *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721 (2003), and *Coleman v.*

*Court of Appeals*, 566 U.S. 30 (2012). (*See* Doc. 17 at § I). Under those cases, which found that Congress validly abrogated immunity for claims under the family-care provisions of the FMLA but not the self-care provisions, Congress may only abrogate Eleventh Amendment immunity based on "a valid exercise of congressional power under §5 of the Fourteenth Amendment," *Coleman*, 566 U.S. at 36, and "evidence of a pattern of constitutional violations on the part of the States in this area." *Hibbs*, 538 U.S. at 729.

In both *Hibbs* and *Coleman*, the Supreme Court examined legislative history surrounding the family-care and self-care provisions of the FMLA to determine: (1) whether Congress was seeking to combat gender discrimination (pursuant to the Fourteenth Amendment) by enacting the provisions; and (2) whether Congress acted based on evidence of gender discrimination by the States related to each provision. *See Hibbs*, 538 U.S. at 728-36; *Coleman*, 566 U.S. at 37-39. This is precisely the analysis in which the Board engaged in its principal brief, marshaling significant evidence that: (1) Congress enacted the FMLA military caregiver amendments to alleviate the burdens experienced by servicemembers' families associated with active military duty (not to combat gender discrimination); and (2) Congress possessed no evidence of gender discrimination by the States concerning leaves of absence for servicemembers' families. (*See* Doc. 17 at § I.D.1).

In response, Williams failed to cite any evidence that Congress enacted the

military caregiver amendments based on an intent to combat gender discrimination or that it acted on evidence of prior constitutional violations by the States. (*See* Doc. 21 at §§ I, IV). Instead, Williams merely cited cases for the general proposition that, when resolving questions of *statutory interpretation*, courts should look to the plain meaning of the statutory language, only resorting to legislative history if the statutory language is unclear. *See, e.g.*, *Warshauer v. Solis*, 577 F.3d 1330, 1335 (11th Cir. 2009); *United States v. Thigpen*, 4 F.3d 1573, 1577 (11th Cir. 1993). (*See* Doc. 21 at 31).

Williams misunderstands the purpose for which the Board cited the applicable legislative history (and for which the Supreme Court cited the legislative history in *Hibbs* and *Coleman*). The question presented in this case is *not* one of statutory interpretation, but rather the basis on which Congress enacted the FMLA military caregiver provisions and the evidence supporting that basis. The Supreme Court principally relied on legislative history when conducting this analysis in *Hibbs* and *Coleman*, and the Board has done the same. As demonstrated by the Board's principal brief, these amendments have no basis in combatting unconstitutional discrimination, and Congress did not validly abrogate the States' immunity. (*See* Doc. 17 at §§ I.C-D).

Williams also argues that no immunity exists simply because the military caregiver statutory language is similar to the family-care provisions of the FMLA.

(*See* Doc. 21 at § I). However, Williams cited no authority showing that an Eleventh Amendment analysis may be conducted in this manner (based on the similarities or differences in statutory language with other provisions with a valid immunity abrogation), and it is contrary to the Supreme Court's analyses in *Hibbs* and *Coleman*. Immunity under each provision must stand or fall on its own—this is why the Court found that Congress validly abrogated the States' immunity under the FMLA family-care provisions but not the self-care provisions, which are part of the same statutory section. Specifically, Congress must act based on evidence of prior discrimination by the States as to the provision at issue. *See Coleman*, 566 U.S. at 42 ("But States may not be subject to suits for damages based on violations of a comprehensive statute unless Congress has identified a specific pattern of constitutional violations by state employers.").

In *Coleman*, the Supreme Court considered and rejected the argument that "the [self-care] provision is a necessary adjunct to the family-care provisions" and refused to find immunity abrogation on these grounds. *Coleman*, 566 U.S. at 39. Despite these provisions utilizing similar language (arguably more similar than the language of the military caregiver provisions), the Court instead focused on the lack of evidence in the Congressional record about the inter-relatedness of the two provisions or the connection of the self-care provision itself to combatting gender discrimination. *See Coleman*, 566 U.S. at 41 ("Congress made no findings and did

4

not cite specific or detailed evidence to show how the self-care provision is necessary to the family-care provisions or how it reduces an employer's incentives to discriminate against women."). Thus, any similarities in language between the military caregiver and family-care provisions, without the required evidence of gender discrimination by the States against servicemembers' families, do nothing to demonstrate that Congress validly abrogated the States' immunity.

Further, the fact that the FMLA states a general purpose to "minimize[e] the potential for employment discrimination on the basis of sex," 29 U.S.C. § 2601(b)(4), did not prevent the Supreme Court in *Coleman* from finding a lack of immunity abrogation for the FMLA self-care provision, and it similarly does not impact the analysis in this case.

Finally, Williams argues that the structure of the FMLA (specifically, that the "Servicemember Family Leave" section appears as 29 U.S.C. § 2612(a)(3) instead of in subsection (a)(1) with the rest of the entitlements to leave) somehow demonstrates that Congress validly abrogated immunity for the military caregiver provisions. (*See* Doc. 21 at 22). Besides being entirely irrelevant (for the reasons described above), this difference has a simple explanation: subsection (a)(1) states the bases on which employees may take "a total of 12 workweeks of leave," but servicemember family leave entitles an employee to "a total of 26 workweeks of leave." *See* 29 U.S.C. § 2612(a). Thus, the servicemember family leave provision

5

could not be included in subsection (a)(1) without entirely rewriting the subsection. That Williams attempts to divine some other meaning related to immunity abrogation is nonsensical.

## II. THE DISTRICT COURT ERRED BY FINDING THAT WILLIAMS TOOK FMLA FAMILY-CARE LEAVE, NOT MILITARY CAREGIVER LEAVE.

As described in the Board's principal brief, the district court improperly found that Williams took FMLA family-care leave, not military caregiver leave, because: (1) the court's finding contradicted the facts alleged in Williams' Complaint; and (2) Williams' Complaint does not contain the facts necessary to support the court's finding of family-care leave. (*See* Doc. 17 at § II).

Williams' arguments against this conclusion are unavailing. (*See* Doc. 21 at § II). She contends that the district court had authority to reform her allegations into a request for family-care leave, citing cases such as *Euroboor B.V. v. Grafova*, No. 2:17-cv-02157-KOB, 2021 U.S. Dist. LEXIS 182157, at *77 (N.D. Ala. Sept. 23, 2021) ("Courts must look to the *facts* alleged in the plaintiff's complaint—as opposed to the plaintiff's *legal theories*—to determine whether the plaintiff sufficiently stated a claim under a cause of action.") (emphasis in original).[1] (*See* Doc. 21 at 26). The Board agrees that courts may reform a plaintiff's legal theories

---

[1] The portion of *Smith v. Bellsouth Telecommms., Inc.*, 273 F.3d 1303, 1313-14 (11th Cir. 2001), cited by Williams (*see* Doc. 21 at 24) for the proposition that "nomenclature counts less than substance," concerned whether "retaliation" is a proper term for an FMLA claim. Thus, *Smith* bears no connection to the issues in this case.

to fit the alleged facts, but that is not what occurred in this case. Instead, the court improperly reformed Williams' *factual* allegations (not merely the legal theories alleged) by contradicting the alleged facts and assuming facts not alleged.

Williams' Complaint specifically alleges that she requested leave by completing a "Military Family Medical Leave of Absence Request Form" and that the Board approved her for "Military Qualifying Exigency Leave." (*See* App. Ex. 2 at ¶¶ 12, 17). Nowhere in Williams' Complaint did she allege that she took leave under the family-care provisions of the FMLA or reference the statutory subsection for the family-care provisions (29 U.S.C. § 2612(a)(1)(C)). While the court could reform Williams' legal theories to fit these facts, the court was without authority to reform these factual allegations to fit a family-care legal theory.

Compounding this problem, and irrespective of the fact that Williams did not use the words "family-care leave" in her Complaint, the Complaint did not even allege the facts necessary to support a finding that she took FMLA family-care leave. As stated in the Board's principal brief, under the statutory definition of "son or daughter," Williams could only qualify for family-care leave if her daughter was "incapable of self-care because of a mental or physical disability." 29 U.S.C. § 2611(12). However, Williams alleged no facts to establish that her daughter was incapable of self-care. (*See* Doc. 17 at § II.B). Thus, in finding that Williams was eligible for family-care leave, the district court was required to assume (without

supporting factual allegations) that Williams' daughter met this definition. This assumption was erroneous.[2]

While Williams argues that the Board is precluded from raising this error on appeal because the Board did not first raise it with the district court (*see* Doc. 21 at § III), her argument defies logic. Neither Williams' Complaint nor her opposition to the Board's motion to dismiss contained any allegation or argument that Williams took or was entitled to family-care leave (as opposed to military caregiver leave). (*See* App. Exs. 2, 4). Instead, the Board only became aware of this contention after the district court's denial of the Board's motion to dismiss, when the district court made the finding *sua sponte*. Thus, the Board had no opportunity to raise this issue with the district court prior to the appealable order itself.[3]

An appellate issue is not waived "where the appellant raises an objection to an order which he had no opportunity to raise at the district court level." *Dean Witter*

---

[2] Williams cites *Bush v. Aqua Dimensions Plumbing Service*s, No. 2:19-cv-14163, 2019 U.S. Dist. LEXIS 138585 (S.D. Fla. Aug. 16, 2019), to contradict the Board's argument (*see* Doc. 21 at 27), but that case is inapposite. In *Bush*, the defendant introduced evidence that the plaintiff was not legally married to his "wife" and thus ineligible for FMLA leave to care for her. *See id*. at *1. The district court properly rejected the defendant's Rule 12(b)(6) challenge for introducing evidence outside the pleadings. *See id*. at *3. In this case, the Board is not introducing evidence outside of Williams' allegations but merely pointing out that Williams' Complaint does not contain sufficient allegations to support a finding of family-care leave.

[3] While the Board could have filed a motion for reconsideration of an interlocutory order (presumably under Federal Rule of Civil Procedure 54(b)), such motions are disfavored. *See, e.g.*, *Kirksey v. Schindler Elevator Corp.*, No. 15-0115-WS-N, 2016 U.S. Dist. LEXIS 149636, at *6 (S.D. Ala. Oct. 28, 2016) ("Motions for reconsideration of an interlocutory order are a disfavored, extraordinary remedy that must be employed sparingly."). Further, the impact of such a motion on the timeliness of this appeal is entirely unclear, and the Board is not required to file a motion for reconsideration prior to initiation of an appeal.

*Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 361 (11th Cir. 1984). In *JCC, Inc. v. Commodity Futures Trading Commission*, 63 F.3d 1557 (11th Cir. 1995), this Court confronted a similar issue and found no waiver of appellate review. In that case, the Commodity Futures Trading Commission reviewed an ALJ's decision under *de novo* review, and the appellant sought review of the Commission's decision to conduct *de novo* review. This Court found: "[T]his issue is properly before us as the petitioners did not need to—indeed could not—raise a challenge to the Commission's authority to independently review the factual record until the Commission had performed the challenged act." *Id.* at 1565. This case presents the same situation: the Board did not need to, and indeed could not, challenge the reframing of Williams' allegations into a claim for family-care leave until the district court took this action (without notice to the parties or a request or argument by Williams). The Board did not waive this issue, and the district court's reforming of Williams' allegations into a claim under the FMLA family-care provisions was erroneous.

III.  **THE STATE OF ALABAMA DID NOT WAIVE IMMUNITY FOR FMLA MILITARY CAREGIVER CLAIMS UNDER THE MILITARY CLAUSES OF THE CONSTITUTION.**

Williams last states, in alternative fashion and with practically no supporting citation or argument, that the States waived their immunity from claims under the FMLA military caregiver provisions under clauses 12-13 of Article I, Section 8 of the Constitution, which state: "The Congress shall have Power . . . To raise and

support Armies, but no Appropriation of Money to that Use shall be for a longer Term than two Years; [and] To provide and maintain a Navy . . . ." (*See* Doc. 21 at § V).

Based on Williams' sole case citation, the Board understands her to base this argument on *Torres v. Texas Department of Public Safety*, 142 S. Ct. 2455 (2022), in which the Supreme Court held that "States . . . gave up their immunity from congressionally authorized suits pursuant to the 'plan of the Convention'" concerning the "federal policy to build and keep a national military," and this immunity waiver extends to suits concerning reemployment rights under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"). *See id*. at 2460.

Williams has not brought any claims under USERRA. Thus, she argues by analogy that, because "the servicemember family leave provision allows for 'next of kin' to care for military members who are providing for the common defense" (*see* Doc. 21 at 34), the immunity waiver found in *Torres* applies to her FMLA military caregiver claims. This sparse argument fails on multiple fronts.

First, the Supreme Court explicitly stated that "Congress enacted USERRA as an exercise of its power '[t]o raise and support Armies' and '[t]o provide and maintain a Navy.' U. S. Const., Art. I, §8, cls. 12-13." *Id.* at 2461. Williams has cited no evidence that Congress enacted the military caregiver provisions of the FMLA,

10

or the FMLA as a whole, pursuant to these provisions. (*See* Doc. 21 at § V). Rather, the Court stated in *Hibbs*: "In enacting the FMLA, Congress relied on two of the powers vested in it by the Constitution: its Article I commerce power and its power under § 5 of the Fourteenth Amendment to enforce that Amendment's guarantees." *Hibbs*, 538 U.S. at 726-27. According to the *Torres* Court, the waiver at issue has only been found in regard to the Bankruptcy clause, delegation of the federal eminent domain power, and the army and navy clauses at issue in *Torres*, but never in regard to Congress' Article I commerce power or § 5 of the Fourteenth Amendment. *See Torres*, 142 S. Ct. at 2466-68; *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 63 (1996). Thus, *Torres* does not extend to the FMLA military caregiver provisions, and no case has held to the contrary.

Second, the FMLA military caregiver provisions do not meet the standard for waiver of immunity identified in *Torres*: "whether the federal power at issue is 'complete in itself, and the States consented to the exercise of that power—in its entirety—in the plan of the Convention.'" *Torres*, 142 S. Ct. at 2463 (quoting *PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2263 (2021). In *Torres*, the Court focused on the "complete delegation of authority to the Federal Government to provide for the common defense," and that "[t]he Constitution also divests the States of like power." *Torres*, 142 S. Ct. at 2463. For waiver to apply, there must be "compelling evidence that the Founders thought such a surrender

inherent in the constitutional compact." *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 781 (1991).

The military caregiver provisions of the FMLA concern an employee benefit—leaves of absence for family members of those in the Armed Forces—that is not exclusively delegated to the federal government to regulate. For instance, several states have laws regulating employee leaves of absence for servicemembers' families. *See, e.g.*, Cal. Gov. Code § 12945.2(a), (b)(5)(D); Colo. Rev. Stat. §§ 8-13.3-503(16), 8-13.3-504(d); Conn. Gen. Stat. § 31-51ll(a)(2)(F); Mass. Gen. Laws ch. 175M §§ 1, 2(a); N.Y. Comp. Codes R. & Regs. tit. 12 § 380-2.3; Wash. Rev. Code § 49.77.030. Given that the regulation of military caregiver leave plainly is not an area of exclusive federal control, Williams cannot offer compelling evidence that the Founders intended this area solely to be under the federal domain as part of the plan of the Convention.

Further support that the States did not waive their immunity is found in the statutory text of USERRA (but not in the FMLA): USERRA specifically contemplates suits against state employers, *see* 38 U.S.C. § 4323, a factor the *Torres* Court found significant. *See Torres*, 142 S. Ct. at 2466. The FMLA contains no similar provision. Therefore, Williams' perfunctory argument under *Torres* is meritless, and the Court should disregard it.

## **CONCLUSION**

Because Williams' claims arise under the military caregiver provisions of the FMLA, and because claims under such provisions are barred by sovereign immunity, this Court should reverse the district court and find that the Board is immune from Williams' claims and that her Complaint must be dismissed in its entirety, with prejudice.

Respectfully submitted this 1st day of September, 2023.

*/s/ B. Tyler White*
B. Tyler White
**JACKSON LEWIS P.C.**
501 Riverside Avenue, Suite 902
Jacksonville, Florida  32202
Telephone:  904-638-2665
Tyler.White@jacksonlewis.com

Lynlee Wells Palmer
Daniel B. Harris
**JACKSON LEWIS P.C.**
Synovus Center
800 Shades Creek Parkway, Suite 870
Birmingham, Alabama  35209
Direct Dials:  205-332-3096/3097
Facsimile:  205-332-3131
Lynlee.Palmer@jacksonlewis.com
Daniel.Harris@jacksonlewis.com

David R. Mellon
Spencer A. Kinderman
Emily T. Vande Lune
**THE UNIVERSITY OF ALABAMA
SYSTEM UAB OFFICE OF COUNSEL**
1720 2nd Avenue South, Suite AB 820
Birmingham, Alabama  35294
Telephone:  205-934-3474
drmellon@uasystem.edu
skinderman@uasystem.edu
evandelune@uasystem.edu

**ATTORNEYS FOR APPELLANT THE
BOARD OF TRUSTEES OF THE
UNIVERSITY OF ALABAMA**

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS AND TYPE-STYLE REQUIREMENTS

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 3,377 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as calculated by the word-counting feature of Microsoft Word. The foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) and is presented in proportionally spaced font typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ B. Tyler White*
Counsel for Appellant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 1st day of September, 2023, a true and correct copy of the above and foregoing was electronically filed utilizing the Court's CM/ECF system, which will automatically send notice to the following:

Blake C. Edwards, Esq.
Nicole D. Edwards, Esq.
**EDWARDS & EDWARDS ATTORNEYS AND MEDIATORS, PLLC**
3603 Pine Lane, Suite C
Bessemer, AL 35022

**Attorneys for Appellee Kristie Williams**

*/s/ B. Tyler White*
Counsel for Appellant